405 F.3d 115
 Carlos VIVES, Plaintiff-Appellee,
v.
The CITY OF NEW YORK, Raymond Kelly, Commissioner of the New York City Police Department, Ming Y. Li; a Detective of the New York City Police Department, and Manwai Lu, a Detective of the New York City Police Department, Defendants-Appellants.
 No. 03-9270.
 United States Court of Appeals, Second Circuit.
 Argued: November 3, 2004.
 Decided: December 21, 2004.
 As Amended January 18, 2005 and April 29, 2005.
 
 Christopher Dunn (Arthur Eisenberg, of counsel), New York Civil Liberties Union Foundation, New York, NY, for Plaintiff-Appellee.
 Elizabeth I. Freedman (Leonard Koerner, Francis F. Caputo, of counsel; Michael A. Cardozo, on the brief), Corporation Counsel of the City of New York, New York, NY, for Defendants-Appellants.
 Before: CARDAMONE, MCLAUGHLIN and CABRANES, Circuit Judges.
 Judge CARDAMONE filed a separate opinion, dissenting in part and concurring in part.
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 Plaintiff Carlos Vives brought this action against defendants,[1] seeking declaratory and injunctive relief and monetary damages, based on his contention that his First and Fourth Amendment rights were violated when he was arrested for aggravated harassment pursuant to New York Penal Law § 240.30(1)[2] ("section 240.30(1)") in connection with his mailing non-threatening religious and political materials to Jane Hoffman, then a candidate for New York State Lieutenant Governor, and other "people of the Jewish faith." Vives, 305 F.Supp.2d at 294. Vives stated that he sent these materials "with the intent to alarm [the recipients] about current world events that have been prophesied in the Bible." Id.
 
 
 2
 Noting that section 240.30(1) had "never before been declared unconstitutional on its face," the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) nonetheless concluded "that a declaration of [the section's] unconstitutionality was inevitable, and [that,] under these circumstances, the defendants may be said to have had fair notice of [section 240.30(1)'s] unconstitutionality" prior to arresting Vives. Id. at 303. The District Court consequently denied Detectives Li and Lu's motion for summary judgment and found that, if defendants wanted to avoid personal liability, they would have to "prove at trial that their actions were reasonable under the circumstances." Id.
 
 
 3
 Because we hold that defendants did not have fair notice of the District Court's "inevitable" declaration of section 240.30(1)'s unconstitutionality, we reverse the District Court's denial of defendants' motion for summary judgment with respect to the issue of defendants' personal liability.
 
 DISCUSSION
 
 4
 We review a district court's denial of summary judgment de novo. Maxwell v. City of New York, 102 F.3d 664, 667 (2d Cir.1996).
 
 We have held that
 
 5
 absent contrary direction, state officials ... are entitled to rely on a presumptively valid state statute ... until and unless [the statute is] declared unconstitutional.... The enactment of a law forecloses speculation by enforcement officers concerning [the law's] constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.
 
 
 6
 Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 102-03 (2d Cir.2003) (citations, quotation marks, and alterations omitted). Despite this directive, the District Court did not apply the standard articulated in Blumenthal to defendants' case. Instead, the District Court relied on certain language from In re State Police Litigation, 88 F.3d 111 (2d Cir.1996) — a case which did not involve state officials acting under the color of a properly-enacted statute — and decided that Detectives Li and Lu were not entitled to rely on the presumptive constitutionality of section 240.30(1)" `if, in light of pre-existing law, the unlawfulness of [their] action[s] was apparent.'" Vives, 305 F.Supp.2d at 297 (quoting In re State Police Litig., 88 F.3d at 123).
 
 
 7
 The District Court then found that pre-existing law "foreshadowed" the unconstitutionality of section 240.30(1), id. at 301, with such "obvious clarity" that "a reasonable officer [would have known] that [arresting plaintiff under section 240.30(1) for his mailings] was unlawful," id. at 297 (internal citations and quotation marks omitted). In so finding, the District Court relied principally on four cases, see id. at 300-01, none of which stands for the proposition that section 240.30(1) is facially unconstitutional.
 
 
 8
 In the first case relied on by the District Court, People v. Dupont, 107 A.D.2d 247, 486 N.Y.S.2d 169 (1st Dep't 1985), the Appellate Division held that section 240.30(1) was unconstitutional only as applied to the facts before it.[3] People v. Dietze, 75 N.Y.2d 47, 550 N.Y.S.2d 595, 549 N.E.2d 1166 (1989), the second of the four, dealt with the constitutionality of an entirely different penal section.[4] The third case, Schlagler v. Phillips, 985 F.Supp. 419 (S.D.N.Y.1997), was reversed on appeal, 166 F.3d 439 (2d Cir.1999).[5] And in the fourth case, People v. Mangano, 100 N.Y.2d 569, 764 N.Y.S.2d 379, 796 N.E.2d 470 (2003), the judgment was entered on July 2, 2003, more than a year after Detectives Li and Lu arrested plaintiff on April 6, 2002.[6] As such, none of these cases could possibly have served as fair notice to Detectives Li and Lu "that a declaration of [section 240.30(1)'s] unconstitutionality was inevitable." Vives, 305 F.Supp.2d at 303.
 
 
 9
 Far from being "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws," Blumenthal, 346 F.3d at 103, several courts have specifically declined to find section 240.30(1) unconstitutional. See, e.g., People v. Diraimondo, 174 Misc.2d 937, 667 N.Y.S.2d 205, 207-08 (N.Y. Dist. Ct., Nassau Cty.1997) (finding "that the defendant ... failed to meet the heavy burden of proving [section 240.30(1)] unconstitutional beyond a reasonable doubt"); People v. Miguez, 153 Misc.2d 442, 590 N.Y.S.2d 156, 157 (1st Dep't 1992) (rejecting "defendant's contention that her conduct[, which violated section 240.30(1),] qualifie[d] as constitutionally protected speech"); People v. Katz, 135 Misc.2d 857, 518 N.Y.S.2d 721, 723 (1st Dep't 1987) ("Defendant's ... argument that [section 240.30(1)] is void for vagueness ... is ... unavailing."). These cases, in conjunction with our ruling in Schlagler, see note 5 ante, lead us to conclude that the detectives' reliance on the presumptive constitutionality of section 240.30(1) was appropriate.
 
 
 10
 On the basis of the foregoing, we hold that defendants did not have fair notice of section 240.30(1)'s purported unconstitutionality and that the District Court erred in denying Detectives Li and Lu qualified immunity on that ground. Because we hold that the District Court's denial of qualified immunity to defendants was improper, we do not reach the question of whether New York Penal Law § 240.30(1) survives constitutional scrutiny, but save that question for another day. See Ehrlich v. Town of Glastonbury, 348 F.3d 48, 57 (2d Cir.2003) (recognizing that, consistent with Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), "we may [in certain circumstances] move directly to [the question of qualified immunity] and refrain from determining whether a constitutional right has been violated");[7] see also Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."); Anobile v. Pelligrino, 303 F.3d 107, 123 (2d Cir.2001) ("Principles of judicial restraint caution us to avoid reaching constitutional questions when they are unnecessary to the disposition of a case.").
 
 CONCLUSION
 
 11
 The portion of the District Court's judgment denying defendants qualified immunity is reversed, and the cause is remanded to the District Court with instructions to enter summary judgment in favor of defendants on the issue of defendants' personal liability.
 
 
 
 Notes:
 
 
 [1]
 Pursuant to 28 U.S.C. § 2403(b), the District Court notified the New York State Attorney General of this action and plaintiff's challenge to "the constitutionality of section 240.30(1) of the New York State Penal Law as it applies to nonthreatening materials protected by the First Amendment."Vives v. City of New York, 02 Civ. 6646, Certification Order (S.D.N.Y. Mar. 21, 2003). Despite the Certification Order, the State of New York did not appear in the District Court to defend the constitutionality of section 240.30(1). See Vives v. City of New York, 305 F.Supp.2d 289, 293 n. 3 (S.D.N.Y.2003). We notified the Attorney General of this appeal, but the Attorney General, in a letter from Caitlin Hannigan, New York State Solicitor General, dated October 22, 2004, has again declined to appear and does not defend the constitutionality of section 240.30(1) to this Court.
 
 
 [2]
 New York Penal Law § 240.30 provides in relevant part:
 A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she: (1) Either (a) communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm; or (b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm.
 
 
 [3]
 See Dupont, 486 N.Y.S.2d at 177 ("Count 10 of the indictment was an overly broad effort to apply § 240.30[,].... [and] is unconstitutional as applied in this instance."). "While [the Dupont Court] may have purported to declare [section 240.30] facially invalid, it is not entirely clear that it did so and in any event does not render invalid all prosecutions under the statute." Schlagler v. Phillips, 166 F.3d 439, 443 (2d Cir.1999).
 
 
 [4]
 Dietze involved N.Y. Penal Law § 240.25(2), which criminalized the use of "abusive or obscene language" "with the intent to harass, annoy or alarm another person." Though section 240.25 is similar in form to section 240.30, the Court of Appeals' conclusion that section 240.25(2) ran afoul of the First Amendment, Dietze, 75 N.Y.2d at 50 & n. 1, 550 N.Y.S.2d 595, 549 N.E.2d 1166, is not dispositive of § 240.30(1)'s constitutionality, which does not criminalize a particular class of words.
 
 
 [5]
 In reversing the District Court's conclusion that section 240.30(1) had previously been declared unconstitutional, and thus that "prosecution [under it] was brought in bad faith," we specifically stated that "there has been no conclusive determination that section 240.30(1) is unconstitutional" and declined to reach the question of the section's constitutionalitySchlagler, 166 F.3d at 443.
 
 
 [6]
 InMangano, moreover, the New York Court of Appeals did not declare section 240.30(1) unconstitutional. After citing a prior case in which the Court had confirmed that section 240.30 was constitutional as applied to the facts therein, People v. Shack, 86 N.Y.2d 529, 634 N.Y.S.2d 660, 658 N.E.2d 706 (1995), the Court said that, on the facts in Mangano,"[w]e cannot agree with the People's argument that appellant's messages fall within any of the proscribable classes of speech or conduct," Mangano, 100 N.Y.2d at 571, 764 N.Y.S.2d 379, 796 N.E.2d 470.
 
 
 [7]
 Although the constitutionality of section 240.30(1) was not properly presented to us, Judge Cardamone takes issue with our decision not to address the penal provision's constitutionality. We do not reach the constitutional question because we are reluctant to pass on the issue indicta and because the parties did not genuinely dispute the constitutionality of section 240.30(1) either in the District Court or on appeal. See Ehrlich, 348 F.3d at 56-60; Horne v. Coughlin, 191 F.3d 244, 246-50 (2d Cir.1999). Judge Cardamone states that "the majority cannot reasonably declare that the parties did not address this issue," post, at 137. Yet defendants concede in their opening brief that they "took no position in the District Court with respect to the constitutionality of P.L. § 240.30(1)," and that, though they "believe that the statute was and is constitutional," instead of defending that position, they stress their view that "this Court need not resolve the question of the constitutionality of the statute on this appeal at this time." Defendants' Br. at 42-43. The City, for its part, did not appear to defend the statute, and plaintiff confirms that "the City made no effort in the District Court to defend the statute," noting that defendants' "brief to this court does not address any of the considerable Supreme Court law pertinent to this point, relying instead only on a string cite to lower-court state cases they suggest establish the constitutionality of section 240.30(1)." Plaintiff's Br. at 23.
 
 
 
 12
 CARDAMONE, Circuit Judge, concurring in part, and dissenting in part.
 
 
 13
 I agree with the majority's conclusion that the defendants did not have fair notice of § 240.30(1)'s unconstitutionality, and thus are entitled to qualified immunity. Police officers clearly should not be subjected to liability for failing to substitute their own legal judgment for that of state trial and appellate courts. See Pierson v. Ray, 386 U.S. 547, 555, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).
 
 
 14
 I respectfully depart from the majority insofar as it does not address the constitutionality of § 240.30(1). The Supreme Court has instructed us as follows:
 
 
 15
 In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.
 
 
 16
 A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?
 
 
 17
 Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The majority passes over this preliminary inquiry, holding instead that the "fair notice" prong of the test is not met and from that concluding that there is no need to reach the constitutional question. Saucier precludes this approach. Finding a constitutional violation is a prerequisite to reaching the fair notice issue, and answering the constitutional question is therefore "[ ]necessary to the disposition of the case." Anobile v. Pelligrino, 303 F.3d 107, 123 (2d Cir.2002). My reasons for this conclusion are detailed in the discussion that follows.[8]
 
 DISCUSSION
 
 18
 * A. Horne
 
 
 19
 In Ehrlich v. Town of Glastonbury, 348 F.3d 48 (2d Cir.2003), we reaffirmed that "[i]n Saucier, the Supreme Court made plain that a sequential two-step analysis of qualified immunity claims is not simply recommended but required." Id. at 56-57. Ehrlich nonetheless found exceptions to this otherwise straightforward rule, based on principles set forth in our pre-Saucier decision, Horne v. Coughlin, 191 F.3d 244 (2d Cir.1999). I dissented in Horne because then-governing Supreme Court precedent stated that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only after making such a determination that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). From this I concluded
 
 
 20
 A federal court faced with a suit alleging the deprivation of a constitutional right under 42 U.S.C. § 1983 should ordinarily decide whether the constitutional right alleged by the plaintiff actually exists, even where the defense of qualified immunity might provide an alternative ground for decision. Although this principle need not govern in each and every case, it is undoubtedly the "[n]ormal [ ]" rule and the "better approach" to constitutional adjudication in § 1983 litigation. Moreover, neither the policy of avoidance of constitutional questions nor the remote possibility of clarifying the law in later suits for injunctive relief justifies a departure from this general principle. Rather, courts remain free to depart from the general rule only in those situations where they can articulate a persuasive reason for doing so.
 
 
 21
 Horne, 191 F.3d at 251-52 (Cardamone, J., dissenting). I did not believe that the Horne majority articulated sufficient reasons for avoiding the constitutional question in that case.
 
 B. Ehrlich
 
 22
 Of course, I was outvoted in Horne, and the Ehrlich panel sought to salvage what it could of Horne in light of the Supreme Court's holding in Saucier that the threshold constitutional inquiry is mandatory rather than simply the better approach. Whatever misgivings I may have about Ehrlich's treatment of Saucier, Ehrlich is the law in the Circuit and must be met on its own terms. Even working within the confines of Ehrlich, however, I cannot agree with the majority because Ehrlich does not provide authority to allow us to decline to reach the constitutional issue in this case.
 
 
 23
 Ehrlich states that "in those situations in which one can conclude that the Supreme Court did not intend to make the Saucier sequence mandatory," the Horne principles are relevant to determining whether we should avoid the constitutional question. Ehrlich, 348 F.3d at 57. Those principles indicate, for example, that this Court: (1) should address "particularly egregious" constitutional violations before deciding the qualified immunity issue; (2) may pass over "particularly difficult" constitutional questions and move directly to the qualified immunity issue; and (3) when defendants are entitled to qualified immunity, may pass over the constitutional inquiry to avoid "constitutional dicta." Id. at 56.
 
 
 24
 The Ehrlich panel identified two situations in which it may "frequently be appropriate" to conclude that the Saucier sequence is inapplicable and the Horne principles are relevant. Id. at 57-58. First, we need not follow the Saucier inquiry if there is no "`likelihood that the [constitutional] question will escape federal court review over a lengthy period'" because federal courts will not "repeatedly rely on qualified immunity to decide cases." Koch v. Town of Brattleboro, 287 F.3d 162, 166 (2d Cir.2002) (quoting Horne, 191 F.3d at 249); see Ehrlich, 348 F.3d at 57. Second, we need not follow Saucier if "the existence of a constitutional violation depends on the resolution of uncertain state law," meaning that a federal court would have to first interpret state law and then decide whether its interpretation presents a constitutional problem. Ehrlich, 348 F.3d at 58.
 
 
 25
 Neither of these exceptions from Saucier apply to this case. First, this is precisely the type of constitutional issue that will repeatedly escape review by federal courts. As the majority opinion demonstrates, numerous New York state courts have upheld the constitutionality of § 240.30(1) or have applied the law as if it was constitutional. Thus, police officers — like the defendants in this case — will always lack "fair notice" of the law's unconstitutionality and will always be entitled to qualified immunity. Federal courts reviewing arrests under § 240.30(1), like the majority here, will "repeatedly rely on qualified immunity" and thus this issue will "`escape federal court review over a lengthy period.'" Koch, 287 F.3d at 166 (quoting Horne, 191 F.3d at 249).
 
 
 26
 Second, this is plainly not an unsettled or ambiguous state law that we would need to interpret. When state law is unclear, "adopting our own interpretation of state law would actually subvert Saucier, by inducing state actors to rely on our rule when that rule might change altogether upon subsequent review by the relevant state courts." Ehrlich, 348 F.3d at 58. No such concern is present here. The majority concedes that § 240.30(1) is over 40 years old and that numerous state courts have found it constitutional. The statute's plain language defines the crime of aggravated harassment in the second degree as "communicat[ing] with a person anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to cause annoyance or alarm" with the "intent to harass, annoy, threaten or alarm [the other] person."[9] State courts have applied this provision to mean exactly what it says: that in order to obtain a conviction for aggravated harassment in the second degree, the state need only prove that a person, like Vives, invaded "substantial privacy interests" by communicating in an annoying or alarming manner. See, e.g., People v. Goldstein, 196 Misc.2d 741, 747-48, 763 N.Y.S.2d 390 (N.Y.App. Term 2003); People v. Cooper, 4 Misc.3d 788, 792-94, 781 N.Y.S.2d 201 (Nassau County Ct.2004); People v. Miguez, 147 Misc.2d 482, 484-86, 556 N.Y.S.2d 231 (N.Y.City Crim.Ct.1990), aff'd, 153 Misc.2d 442, 590 N.Y.S.2d 156 (N.Y.App. Term 1992).[10]
 
 
 27
 The meaning of this law is straightforward and unambiguous, and the state courts have given us no cause to think otherwise. Indeed, since state courts have interpreted the meaning of this law consistently over the past 40 years, there is no realistic possibility that state courts are suddenly going to reinterpret § 240.30(1). There is, of course, always a chance that the New York State Court of Appeals will reverse several lower state courts and hold the law unconstitutional, but this does not mean that the meaning of the law is unsettled. And, in any event, such a possibility is not an adequate reason for a federal court to decline to exercise its responsibility to determine what the federal Constitution requires.
 
 
 28
 The majority states no rationale for deciding that Saucier is inapplicable. Instead, it relies solely on the Horne factors as a reason to disregard Saucier, an approach that we explicitly rejected in Ehrlich. See Ehrlich, 348 F.3d at 56 ("These principles cannot, of course, make discretionary what the Supreme Court has deemed mandatory. They do, however, affect the choice in those cases in which the underlying rationale in Saucier does not apply.") (emphases omitted).
 
 C. The Horne Factors
 
 29
 The majority rests its decision on the avoidance of "constitutional dicta." Under Ehrlich, this is not, in itself, a sufficient ground for disregarding Saucier. Even if it were, however, it provides no justification for avoiding the constitutional question in this case.
 
 
 30
 In cases in which we ultimately resolve the issue in favor of defendants on qualified immunity grounds, any finding of a constitutional violation is dicta. As we noted in Ehrlich, however, "the Supreme Court, by the very logic of Saucier, makes clear that such dicta is enough to put defendant state actors on notice that, if they repeat their acts, they will not have the benefit of qualified immunity." Ehrlich, 348 F.3d at 56 n. 11. I believe this principle carries added weight in a case where, as here, state courts have placed the imprimatur of legitimacy on an arguable violation of the federal Constitution, and thus if a federal court does not step in and inform state actors that the law violates the federal Constitution, state law enforcement officers will continue to be placed in the same impossible position as the defendants in this case: they will have a duty to enforce a law that violates core federal constitutional rights because state courts have told them that the law is valid.
 
 
 31
 Although the Horne majority expressed concern about constitutional holdings in dicta, Horne, 191 F.3d at 247-48, none of those concerns should overcome the necessity of reaching the constitutional issue in this case. The Horne majority fretted that "judges risk being insufficiently thoughtful and cautious in uttering pronouncements" in dicta, and that "parties may do an inadequate job briefing and presenting an issue that predictably will have no effect on the outcome of the case." Id. at 247. Such concerns, to the extent they are relevant at all, are hardly relevant here. I doubt that any member of this panel fails to understand the importance of the issues in this case or has been "insufficiently thoughtful and cautious" in deciding this appeal.
 
 
 32
 Further, the majority cannot reasonably declare that the parties did not adequately address this issue. Defendants were represented on appeal by the Corporation Counsel of the City of New York. That office, although it preferred to place more emphasis on the qualified immunity issue that we ultimately resolved in its favor, devoted considerable portions of its opening and reply briefs to defending the constitutionality of § 240.30(1), both under state and federal law. Plaintiffs devote nearly half of their brief to the unconstitutionality of § 240.30(1) under federal law. The New York Attorney General, despite the panel's repeated requests for a brief defending the constitutionality of the statute, refused to defend the law and filed a one-page letter brief conclusorily stating that Vives' actions did not satisfy the elements of § 240.30(1), a position that none of the panel members found persuasive. Thus, it is hard to see how the parties could have better addressed the constitutional issue, and the fact that the State of New York refused to defend its own law cannot serve as grounds for us to decline to decide whether that law is or is not constitutional.
 
 
 33
 The Horne majority raised another objection to constitutional dicta that is more substantial. When we find a constitutional violation, but then find that the defendants are protected by qualified immunity, the defendants have no opportunity to appeal the constitutional issue because they won on qualified immunity. Horne, 191 F.3d at 247.
 
 
 34
 This scenario is, of course, an inescapable result of the sequential order of the Saucier inquiry, and since we cannot both follow Saucier and avoid this problem, we must assume the Supreme Court anticipated this result and was not troubled by it. In any event, if the plaintiff appeals this Court's qualified immunity ruling, there is no reason to believe that the Supreme Court would not review the constitutional issue, since doing so is the first step in analyzing any qualified immunity claim. See Hope v. Pelzer, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (reiterating that, on review of a lower court decision granting defendants qualified immunity, "[t]he threshold inquiry ... is whether plaintiff's allegations, if true, establish a constitutional violation"). As the Supreme Court will have ample opportunity to review our constitutional decision if plaintiff appeals our decision, the expressed concern over constitutional dicta is to my mind unavailing in the present case, especially since the majority failed to articulate any reason why Saucier should not apply.
 
 
 35
 Finally, the constitutional issue before us is not particularly difficult, and the violation is particularly egregious. For the reasons stated below, I have no difficulty finding a serious constitutional violation in the case now before us.
 
 II
 A. Section 240.30(1) is Unconstitutional on its Face
 
 36
 A criminal prohibition on communicating in an annoying or alarming way is facially unconstitutional. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In fact, "a principal `function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.'" Id. at 408-09, 109 S.Ct. 2533 (quoting Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)).
 
 
 37
 In this case, New York City police, acting pursuant to § 240.30(1) and with the blessing of New York courts, arrested Vives for mailing a political and religious statement to a candidate for public office. The officers' ground for arresting Vives was that the recipient found his communication with her "annoying and/or alarming," which is a violation of § 240.30(1). Speech of this sort may only be proscribed in three very limited circumstances: (1) the speech constitutes "fighting words" that "by their very utterance inflict injury or tend to incite an immediate breach of the peace," Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); (2) the speech constitutes "advocacy [that] is directed to inciting or producing imminent lawless action and is likely to incite or produce such action," Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); and (3) the speech constitutes a "`true threat'" by which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (quoting Watts v. United States, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)). Section 240.30(1) is not limited to these three categories. By criminalizing speech that merely annoys or alarms, the statute is unconstitutionally overbroad.
 
 B. Section 240.30(1) is Unconstitutional As Applied
 
 38
 Moreover, § 240.30(1) is unconstitutional as applied. Vives sent, on a single occasion, to a candidate for public office, a non-threatening letter concerning political and religious issues of importance to him. One would be hard-pressed to think of an action that is closer to the core of the First Amendment. See, e.g., Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 760, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) ("[P]rivate religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression."); New York Times Co. v. Sullivan, 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ("The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, `was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'") (quoting Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)).
 
 
 39
 Political or religious speech of the type Vives engaged in, as noted, may only be suppressed if it creates an unjustifiable risk of immediate breach of the peace, imminent lawless action, or a specific threat of violence directed to an individual or group. See Black, 538 U.S. at 359, 123 S.Ct. 1536. Chaplinsky, Brandenburg, and, most recently, Black, make clear that while these narrow limitations are consistent with the First Amendment, broader restrictions are not. See Black, 538 U.S. at 358-59, 123 S.Ct. 1536; Brandenburg, 395 U.S. at 447, 89 S.Ct. 1827; Chaplinsky, 315 U.S. at 573-74, 62 S.Ct. 766. As a consequence, insofar as Vives was arrested under § 240.30(1) for engaging in "annoying and/or alarming" political and religious speech, his arrest is plainly unconstitutional.
 
 CONCLUSION
 
 40
 In Ehrlich, we stated that "[w]e are, of course, bound to implement [Saucier], and fully expect to do so in the vast majority of qualified immunity cases that come before us." Ehrlich, 348 F.3d at 57. The majority's treatment of Saucier in this case demonstrates how far we have deviated from Ehrlich's narrow language. Perhaps our responsibilities were less burdensome under Horne and other pre-Saucier cases, but I am troubled by a decision that seeks to avoid the difficult questions that the Supreme Court has obligated us to face.
 
 
 41
 For whatever reason, New York's courts have shown no inclination to hold that § 240.30(1) violates the First Amendment insofar as it criminalizes speech that is merely annoying or alarming, and New York police continue to enforce the statute to the detriment of citizens' core First Amendment rights. Accordingly, for the reasons stated, I concur with the majority's resolution of the qualified immunity issue, but respectfully dissent from its refusal to reach the constitutional issue and, once and for all, hold § 240.30(1) unconstitutional.
 
 
 
 Notes:
 
 
 [8]
 InBrosseau v. Haugen, 125 S.Ct. 596 (decided Dec. 13, 2004), the Supreme Court declined to reconsider Saucier, see id., at 598 n.3, despite the disagreement of three Justices whose reasons were similar to those the majority adopts in this case. See id. at 601 (Breyer, J., concurring, joined by Scalia and Ginsburg, JJ.).
 
 
 [9]
 The constitutionality of § 240.30(1), insofar as it criminalizes harassing or threatening communications, is not disputed in this appeal
 
 
 [10]
 To be sure, the conduct at issue in some of these cases could be termed harassment, but the courts have not required the state to prove harassment or threats, and for good reason: § 240.30(1) merely requires the state to prove annoyance or alarm