09-3310-cv(L)
*DiBlasio v. Novello*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of March, two thousand eleven.

PRESENT:

DEBRA ANN LIVINGSTON,
DENNY CHIN,

*Circuit Judges*,

DAVID G. LARIMER,

*District Judge.*[*]

---

MARIO DIBLASIO, M.D., and MARIO DIBLASIO, M.D., P.C.,

*Plaintiffs-Appellees/Cross-Appellants*,

v.                                                    No. 09-3310-cv(L)
                                                      No. 09-3448-cv (XAP)[**]
                                                      No. 10-0111-cv (XAP)

ANTONIA C. NOVELLO, in her individual and official capacity, and LISA HAMPTON, in her individual and official capacity,

---

[*] The Honorable David G. Larimer, District Judge of the United States District Court for the Western District of New York, sitting by designation.

[**] Closed by so-ordered stipulation filed December 15, 2009.

*Defendants-Appellants/Cross-Appellees*,

NEW YORK STATE DEPARTMENT OF HEALTH,

*Defendant.*

_____

KEVIN J. HARRINGTON (John T.A. Rosenthal, *on the brief*), Harrington, Ocko & Monk, LLP, White Plains, New York, *for Plaintiffs-Appellees/Cross-Appellants*

RICHARD DEARING, Deputy Solicitor General of the State of New York (Barbara D. Underwood, Benjamin Gutman, and James M. Hershler, *on the brief*), New York, New York, *for Defendants-Appellants/Cross-Appellees*

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, and DECREED that the decision and order of the district court be AFFIRMED IN PART and REVERSED IN PART, and that plaintiff's cross-appeal be DISMISSED. The case is REMANDED for further proceedings consistent with this order.

This case comes before us on appeal for the second time. *See DiBlasio v. Novello*, 344 F.3d 292 (2d Cir. 2003). Defendant-Appellant/Cross-Appellee Antonia C. Novello ("Novello") appeals from a decision and order of the United States District Court for the Southern District of New York (Robinson, *J.*) denying summary judgment to Novello on the federal "stigma-plus" and state defamation claims in this action. Plaintiffs-Appellees/Cross-Appellants Mario DiBlasio, M.D. and Mario DiBlasio M.D., P.C. (collectively, "DiBlasio") cross-appeal from the same decision and order granting summary judgment to Novello and Defendant-Appellant/Cross-Appellee Lisa Hampton ("Hampton") on his facial and as-applied federal constitutional challenges to New York Public Health Law § 230. We assume the parties' familiarity with the underlying facts and procedural history.

We review *de novo* a district court's order granting summary judgment. *Molinari v. Bloomberg*, 564 F.3d 587, 595 (2d Cir. 2009). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (internal quotation marks omitted). The burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists. *Id.* In reviewing a court's decision granting summary judgment, the appellate court must consider "the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006).

### A. Novello's Appeal

At the start, we reject DiBlasio's argument that we lack jurisdiction over Novello's interlocutory appeal from the denial of qualified immunity. While the denial of a motion for summary judgment ordinarily is not immediately appealable, it is well settled that the rejection of the qualified immunity defense is immediately appealable under the collateral order doctrine, to the extent the defense may be established as a matter of law, and where the determination does not require resolution of disputed issues of material fact. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1946 (2009) ("Provided it turns on an issue of law . . . a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of [28 U.S.C.] § 1291." (internal quotation marks omitted)); *see also Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995). Although she has questioned whether there is competent evidence of the allegedly stigmatizing statements at issue in this case, for the purposes of this appeal, Novello "accepts arguendo that [the] statements were made as reported." Defs.' Br. in Opp. 7. This appeal is, therefore, properly before us.

In determining whether Novello is entitled to qualified immunity, we must examine the "objective legal reasonableness of [her] action[s], assessed in light of the legal rules that were clearly

established at the time [they were] taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotations marks omitted); *see also Papineau v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). Whether a right was clearly established at the relevant time must be determined "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The elements of a stigma plus claim are injury to reputation, coupled with the deprivation of a tangible interest or property right, without adequate process. *See DiBlasio*, 344 F.3d at 302. We have previously defined stigma as "public opprobrium" and damage to one's reputation, which can result from governmental statements questioning or attacking one's "good name, reputation, honor, or integrity." *Valmonte v. Bane*, 18 F.3d 992, 999-1000 (2d Cir. 1994).

The key is the state of the law in 2000, when Novello made her public statements. We had previously held that "where there is competent evidence allowing the official to reasonably believe that an emergency [exists], or that affording pre[-]deprivation process would be otherwise impractical," that lack of pre-deprivation process "will not offend the constitutional guarantee of due process, provided there is sufficient post[-]deprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61, 63 (2d Cir. 1999). The invocation of an emergency procedure would thus be a constitutional violation "only where such invocation is arbitrary or amounts to an abuse of discretion." *Id*. at 63. Although the standard for determining whether emergency procedures can be invoked was well-defined, we had not – and still have not – yet addressed the type or breadth of public statements that may be appropriately made in the course of executing such procedures, or in explaining them to the public in the course of one's official duties.

In light of the OPMC investigation report that was before Novello at the time of DiBlasio's suspension, the contents of which are undisputed, Novello had sufficient "competent evidence allowing [her] to reasonably believe that an emergency [did] in fact exist, or that affording

4

predeprivation process would [have been] otherwise impractical." *Id*. The investigation report concluded that Doctor DiBlasio and his supervisor, Dr. Steven Bier, had engaged in flawed breast cancer screening practices, which had resulted in an abnormally low rate of breast cancer detection. In response, a committee of the State Board for Professional Medical Conduct ("BPMC") unanimously recommended bringing charges against both radiologists, while a majority specifically found that their conduct had created an urgent threat to the public health, necessitating an immediate, state-sponsored rescreening of the affected patients. The investigation report and BPMC committee's recommendation provided Novello with sufficient competent evidence to support the belief that affording additional predeprivation process would be impractical in the face of the health emergency at hand, and that any further delay could result in the advancement of as-yet undiagnosed and untreated breast cancer in patients who required rescreening.

Given the lack of clearly established law relating to the boundaries of Novello's permissible public comment in the context of a public health emergency, we find that Novello is entitled to qualified immunity as a matter of law with respect to her public statements announcing, and explaining the bases for, DiBlasio's suspension and the rescreening program, including those statements which concerned DiBlasio's professional reputation and/or impeded his ability to practice.

DiBlasio argues that even if Novello is entitled to qualified immunity concerning her statements which related to the public health emergency, that immunity should not extend to two of the four statements at issue – statements that DiBlasio characterizes as excessively broad, overgeneralized and/or false. Specifically, Novello erroneously implicated DiBlasio in describing improper billing practices by "the physicians," when it was apparently only Dr. Bier who processed the billing, and informed the press (unnecessarily or even, as DiBlasio alleges, incorrectly) that she had forwarded information to authorities for a possible criminal probe.

In point of fact, Novello's statement that she had referred the matters concerning Dr. Bier and his associates for a possible criminal investigation was apparently true. On May 15, 2000,

5

Novello had written to the state Attorney General requesting the investigation, and if warranted, prosecution of Bier and those acting in concert with him. Because the statement was not false, it cannot form the basis for a stigma plus claim, however stigmatizing it might appear to be. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980).

It is possible that false or defamatory statements that are wholly irrelevant, gratuitous or otherwise far beyond the scope of an emergency might in some circumstances rise to the level of violating rights of which a reasonable person would have known. The statements at issue here did not approach that extreme. They pertained to matters explored by the OPMC in its investigation, and were key components of the factual basis for the suspensions Novello was announcing, which included alleged billing irregularities and deficient mammography practices.

Furthermore, to the extent that any of Novello's statements could be viewed as misleading or overbroad, the doctrine of qualified immunity "gives ample room for mistaken judgments." *Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007) (internal quotation marks omitted). Indeed, "[t]he very purpose of qualified immunity is to protect officials when their jobs require them to make difficult on-the-job decisions." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)) "This is especially true when officials are forced to act quickly," such as in the context of a public health emergency. *Id.*

Nor are the isolated statements at issue significant when compared with the whole of Novello's public communications about DiBlasio's suspension, the vast majority of which were undisputedly accurate. Simultaneously with her public statements, Novello issued two press releases which clarified the grounds for DiBlasio's suspension in detail, and accurately delineated the particular charges against him (which did not include billing errors), and against Dr. Bier.

Thus, to the extent that Novello's verbal comments may have strayed into extraneous aspects of the OPMC investigation and the grounds for DiBlasio's suspension, they did not violate statutory or constitutional rights of which a reasonable official would have known. Accordingly, we find that Novello is entitled to qualified immunity with respect to DiBlasio's stigma plus claim.

6

**B. *DiBlasio's Cross-Appeal***

On cross-appeal, DiBlasio raises facial and as-applied constitutional challenges to New York Public Health Law § 230 and contends that the district court erred in granting summary judgment dismissing these claims. For the following reasons, we affirm the district court's grant of summary judgment.

1. *Facial Due Process Challenge to New York Public Health Law § 230*

DiBlasio first argues that New York Public Health Law § 230(12) is unconstitutional on its face because it fails to provide adequate due process. As the district court noted, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Moreover, "absent contrary direction, state officials . . . are entitled to rely on a presumptively valid state statute . . . until and unless [the statute is] declared unconstitutional." *Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir. 2005) (quoting *Conn. ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102-03 (2d Cir. 2003)). The only "possible exception" is a law "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id.*

DiBlasio complains that § 230(12) lacks a preponderance of the evidence standard. As the district court rightly observed, however, DiBlasio does not cite any federal cases holding unconstitutional a public health statute allowing for the temporary suspension of a medical license due to the statute's failure to include a preponderance of the evidence standard. DiBlasio also fails to address the well-recognized principle that due process permits a state to take summary administrative action without pre-deprivation process, but subject to a prompt post-deprivation hearing, where such action is needed to protect public health and safety. *See Gilbert v. Homar*, 520 U.S. 924, 930-33 (1997); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300, 303 (1981); *Catanzaro*, 188 F.3d at 61. DiBlasio's reliance on *Valmonte*, 18 F.3d at 992, is misplaced. The due process violation in *Valmonte* resulted from the "enormous risk of error" that

7

had been both alleged by the plaintiff via statistical evidence and acknowledged by the defendants. *Valmonte*, 18 F.3d at 1003-04 (finding a due process violation where 75% of individuals challenging a suspension were ultimately successful); *see also In re Lee TT v. Dowling*, 87 N.Y.2d 699 (1996). DiBlasio presents no reliable evidence that § 230(12) presented anywhere near the same risk of error.

DiBlasio also reiterates his argument below that § 230(12) is unconstitutional because it does not define "imminent danger." However, courts have long rejected due process challenges against similar standards for statutes authorizing summary action. *See, e.g.*, *Hodel*, 452 U.S. at 301 (defining "imminent danger" as a condition or practice that could reasonably "be expected to cause substantial physical harm to persons . . . before such condition, practice, or violation can be abated"); *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 595-96 (1950); *Fahey v. Mallonee*, 332 U.S. 245, 250-51 n.1 (1947).

In sum, DiBlasio falls well short of fulfilling the requirements for a successful facial challenge. We find no error in the district court's grant of summary judgment to Novello on this claim.

2. *As-Applied Challenges to New York Public Health Law § 230*

On his as-applied challenge to § 230(12), DiBlasio argues that there are material issues of fact with respect to whether exigent circumstances justified a summary suspension, and whether it was impractical to provide DiBlasio with a pre-deprivation hearing. In addition, he contends that Hampton's investigation was also an unconstitutional application of § 230, as Hampton "acted as prosecutor, judge and jury throughout the investigation." Pls.' Br. 80.

We find DiBlasio's arguments to be without merit. As we recognized in *Catanzaro*, a public official may invoke emergency procedures when "competent evidence allow[s] the official to reasonably believe that an emergency does in fact exist, or that affording predeprivation process would be otherwise impractical." 188 F.3d at 63. Such an official commits a constitutional violation "only where such invocation is arbitrary or amounts to an abuse of discretion." *Id.*; *see WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 51-52 (2d Cir. 2009). This "somewhat deferential standard" bars "an exacting hindsight analysis" that would "encourage delay and thereby

8

potentially increase the public's exposure to dangerous conditions." *Catanzaro*, 188 F.3d at 63. We agree with the district court that DiBlasio merely raises minor issues of credibility and evidentiary conflicts that amount to the "exacting hindsight analysis" we rejected in *Catanzaro*.

Likewise, DiBlasio's argument that Hampton's role was beyond that of an investigator fails. In *Hannah v. Larche*, 363 U.S. 420 (1960), the Supreme Court held that an investigatory body whose function is "purely investigative and fact-finding," and that does not adjudicate, "hold trials or determine anyone's civil or criminal liability," "issue orders," nor "indict, punish, or impose any legal sanctions," is not required to provide full due process protections. *Id.* at 441. As Hampton did not have the authority to determine civil or criminal liability, nor to "indict, punish, or impose any legal sanctions," the district court rightly concluded that she was an investigator. The court's grant of summary judgment on DiBlasio's as-applied challenges was therefore proper.

*C. Conclusion*

We therefore affirm the judgment of the district court with respect to DiBlasio's claims challenging the constitutionality of New York Public Health Law §230, reverse the judgment of the district court with respect to Novello's entitlement to qualified immunity concerning DiBlasio's federal stigma plus claim, and direct the district court to grant Novello's motion for summary judgment on that claim. We decline to exercise appellate jurisdiction over DiBlasio's state law defamation claim and leave it to the district court to consider whether to retain or decline jurisdiction over that claim. *See Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995) ("[O]ur jurisdiction over an interlocutory appeal does not necessarily provide us with jurisdiction to hear all the issues decided by the district court."). We note that the state-law absolute and qualified privilege defenses raise different issues from the federal qualified immunity defense. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995) (holding that an appellate court may only reach issues that are "inextricably intertwined" with reviewable issues or "necessary to ensure meaningful review"). The

9

decision and order of the district court is AFFIRMED IN PART and REVERSED IN PART, and DiBlasio's cross-appeal is DISMISSED. The case is REMANDED for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk