OPINION OF THE COURT
Valerie Alexander, J.
The issue of exactly what conduct constitutes the violation of aggravated harassment is one that continues to be raised in mo *704 tions and case law. The defendant is accused of having committed a violation of Penal Law § 240.30 (1), aggravated harassment in the second degree. He moves, pursuant to CPL 170.30, 170.35, 100.15 and 100.40, for a dismissal of the charges against him on the grounds that the accusatory instrument is insufficient on its face, defective, and unconstitutional as applied to the defendant. The People oppose the defendant’s motion, but also move, pursuant to CPL 170.35, to amend the information, should the court find it defective.
The supporting deposition in this case states, in pertinent part, the following:
“On or about and between February 22, 2010 and April 11, 2010, while employed at the Nassau County District Attorney’s Office ... as an Assistant District Attorney, I received a series of telephone voice mail recordings from defendant, Nicolas Pierre-Louis ... In the voice mails, Nicolas Pierre-Louis yells, screams and uses profanity, stating in part, T’m coming at you with fury,’ and, ‘piece of shit faggot fucking cock sucking cock,’ and ‘bitch, you will lose your fucking job,’ and T got all the juice enough to make sure that you’re holding a can in the fucking street,’ and ‘and I will keep calling until you arrest Jessy Pierre-Louis, so do your fucking job’ and ‘when you lose your job bitch, don’t say I didn’t warn you,’ and T will rain hell on your office and make sure heads roll,’ ‘you racist bitch’ and ‘you assholes’ and ‘you motherfuckers.’ Nicolas Pierre-Louis says many other profane and offensive comments left recorded on my office voice mail that are alarming and annoying. The repeated calls left ' by Nicolas Pierre-Louis caused me to fear for my safety and the safety of [another] Assistant District Attorney . . . because of the screaming outbursts of rage and anger directed toward [the other ADA] . . . and I [s¿c] and the content of what he was saying during his many calls.”
The defendant argues that though the defendant’s statements may be vulgar and offensive, they are constitutionally protected speech and therefore should not form the basis of a criminal charge.
A fundamental right, as set forth by the First Amendment of the United States Constitution, as well as by the Constitution of the State of New York, is the right to free speech. (NY Const, *705 art I, § 8.) Therefore, the proscription of any free speech right must be clearly defined so as not to have a chilling effect upon speech that is permissible. (See Reno v American Civil Liberties Union, 521 US 844 [1997]; Vives v City of New York, 305 F Supp 2d 289 [SD NY 2003], revd on other grounds 405 F3d 115 [2005].)
Through the years, the Court has sought to define the areas in which the proscription of free speech is justified. Thus, the seminal case of Chaplinsky v New Hampshire (315 US 568 [1942]) proscribed the use of “fighting words,” those being words “which by their very utterance inflict injury or tend to incite an immediate breach of the peace,” and permitted the prosecution of the defendant for violation of a New Hampshire statute. (Id. at 572; see also Cohen v California, 403 US 15 [1971].) Brandenburg v Ohio (395 US 444, 447 [1969]) as well as Virginia v Black (538 US 343, 359 [2003]), recognized as prescribable speech which “is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.” Likewise, true threats, i.e., “those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals,” will not receive First Amendment protection. (Virginia v Black at 359; see also Watts v United States, 394 US 705 [1969].)
On the other hand, the courts have been quick to strike down those laws which proscribe speech which are entitled to First Amendment protection. Thus, in the case of Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd. (502 US 105, 116 [1991]) the court stated: “[Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment” (quoting Regan v Time, Inc., 468 US 641, 648-649 [1984]). And, in R. A. V. v City of St. Paul, Minnesota: “The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid.” (505 US 377, 382 [1992] [citations omitted].)
Indeed, in the 1989 New York Court of Appeals case People v Dietze, the Court found former Penal Law § 240.25 (2), harassment, to be unconstitutional, holding:
“Because the statute, on its face, prohibits a substantial amount of constitutionally protected expression, and because its continued existence pre *706 sents a significant risk of prosecution for the mere exercise of free speech, we hold section 240.25 (2) to be invalid for overbreadth, under both the State (art I, § 8) and Federal (1st & 14th Amends) Constitutions.” (75 NY2d 47, 50 [1989].)
The preliminary issue, then, is whether the statements made by the defendant are in fact constitutionally protected speech. Here, People v Dietze is also instructive:
“Speech is often ‘abusive’ — even vulgar, derisive, and provocative — and yet it is still protected under the State and Federal constitutional guarantees of free expression unless it is much more than that. Casual conversation may well be ‘abusive’ and intended to ‘annoy’; so, too, may be light-hearted banter or the earnest expression of personal opinion or emotion. But unless speech presents a clear and present danger of some serious substantive evil, it may neither be forbidden nor penalized.” (Id. at 51 [citations omitted].)
Having reviewed the supporting deposition containing the statements made by the defendant, the court is of the opinion that, though vulgar and vituperative in nature, the statements do not rise to the level of “fighting words” as described by Chaplinsky and Cohen nor do they rise to the level of a true threat. In spite of the fact that the defendant uses a number of derisive terms in reference to the ADA, his statements seem confined to threats to have the ADA fired. Even the worst of the alleged statements, “I’m coming at you with fury,” is too vague to be considered a true threat, but is more properly understood in context with the defendant’s other statements. (See e.g. People v Yablov, 183 Misc 2d 880 [2000].)
In the case of People v Dietze, the Court wrestled with many of the same issues involved in this case. Under scrutiny was subdivision (2) of former section 240.25, harassment. That subdivision read as follows:
“A person is guilty of harassment when, with intent to harass, annoy or alarm another person: . . .
“2. In a public place, he uses abusive or obscene language, or makes an obscene gesture.”
Penal Law § 240.30 reads:
“A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:
*707 “1. Either (a) communicates with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm; or
“(b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm.”
As a reading of the two statutes reveals, the difference in the statutes lies in the fact that the statute found unconstitutional in Dietze is accomplished by a communication face to face, while the gravamen of the aggravated harassment statute is that the communication is accomplished by telephone, telegraph, mail, “or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm.” (Id.) The statute does not seek to distinguish between speech which is protected by the First Amendment and that which is not.
Historically, this statute has been supported in case law by asserting that the gravamen of the offense is in the act of invasion of the complainant’s privacy rights. (See e.g. People v Thompson, 28 Misc 3d 483 [Crim Ct, Kings County 2010]; People v Coyle, 186 Misc 2d 772 [Nassau Dist Ct 2000]; People v Hernandez, 7 Misc 3d 857 [Crim Ct, NY County 2005].)
The decisions in these cases did not discuss the issue of protected versus unprotected speech; however, there is a growing recognition in the case law that there is constitutional infirmity when this issue is not considered.
In People v Mangano (100 NY2d 569 [2003]), the Court recognized that this statute was unconstitutional, as it was applied to the defendant. In that case, the defendant left several messages in which the defendant “rained invective” upon two employees at a parking violations bureau. The court stated
“defendant’s messages were crude and offensive but made in the context of complaining about government actions, on a telephone answering machine set up for the purpose (among others) of receiving complaints from the public. We cannot agree with the People’s argument that appellant’s messages *708 fall within any of the proscribable classes of speech or conduct.” {Id. at 571.)
Other courts have reached the same conclusion. (See e.g. People v Dupont, 107 AD2d 247 [1st Dept 1985] [harassment statute was void for vagueness and overbroad when applied to actions of defendant]; People v Yablov, 183 Misc 2d 880 [2000] [statement “we’ll get you” too vague to constitute harassment within the meaning of the statute]; People v Behlin, 21 Misc 3d 338 [Grim Ct, Kings County 2008] [statement that principal should watch it and that defendant was going to get her was insufficient to allege a violation of the statute].)
On the federal level, courts which have considered the issue of the constitutionality of Penal Law § 240.30 (1) have declared it unconstitutional on its face. (See Schlagler v Phillips, 985 F Supp 419 [SD NY 1997], vacated on other grounds 166 F3d 439 [1999]; Vives v City of New York, 305 F Supp 2d 289 [2003], revd on other grounds 405 F3d 115 [2005] [opinion concurring in part, dissenting in part, in which Judge Cardamone argues that court should have reached the issue of the constitutionality of Penal Law § 240.30 (1), which he would have found was unconstitutional on its face].)
A criminal prohibition on communicating in an annoying or alarming way is facially unconstitutional. “If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.” (405 F3d at 123, quoting Texas v Johnson, 491 US 397, 414 [1989].)
It has been frequently argued as justification for this statute and to distinguish it from the statute found unconstitutional in People v Dietze, that the conduct prohibited by the statute is a “trespass by telephone,” and that it protects the privacy rights of the complainant. This argument fails on a number of levels.
First, this statute has been used as a grounds for prosecution when no privacy rights were at issue, as in the case at bar. {See also People v Mangano, supra [statements which were made to employees working in an official capacity]; People v Dupont [in which the “harassment” was accomplished by publication of a magazine].)
Secondly, the Legislature has made clear through amendments to the statute that its intent was to encompass those situations where a communication occurs, regardless of who initiates that communication. (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 240.30.) *709 Such was the source of a prosecution where the communication was initiated by a principal to the parent of a student. (See People v Behlin, supra.) One would be hard-pressed to allege a violation of privacy rights in such a situation.
Thirdly, even in those cases in which calls are initiated by the defendant, there is no basis for asserting a “trespass by telephone.” Such a designation would be a prohibition based upon the content of the communication, since making a phone call, even uninvited to an individual is not a trespass. To create a trespass solely based upon the content of the communication would be violative of basic and fundamental principles of the First and Fourteenth Amendments. (See Simon v Schuster, supra; R. A. V. v City of St. Paul, Minnesota, supra; Leathers v Medlock, 499 US 439 [1991].)
Finally, the concept that “a showing that substantial privacy interests are being invaded in an essentially intolerable manner” (Cohen v California at 21), in the context of contemporary society, must be read to be more than just making an annoying phone call. Today, as many people in our society travel daily with their telephones in tow, making and receiving calls on the go, the privacy interests that may be impacted must be more carefully scrutinized.
To return to the case at hand, the defendant is alleged to have called an assistant district attorney and to have used abusive and crude language in expressing his discontent that Jessy Pierre-Louis had not been arrested for undisclosed crimes. The court has previously determined that the statements allegedly made by the defendant were not among those proscribed by prior case law. Rather, the calls alleged were made to the district attorney’s office on a telephone line used for the purpose of sending and receiving calls from the public. As such, this court finds that the statute is unconstitutional as applied to this case.
The vagueness and overbreadth of this statute is readily apparent. It cries out to be reworked, and sharply limited, to those areas where speech should be circumscribed. It is not enough that charges may be dismissed on a case by case basis. As opined in Dietze,
“While it is argued that the statute’s unconstitutional overbreadth might be cured by restricting its reach to ‘fighting words’ or other words which, by themselves, inflict substantial personal injury, such a ‘cure’ would, indeed, be fraught with significant *710 problems of its own. First, although, to be sure, a statute ought normally to be saved by construing it in accord with constitutional requirements, it is basic that the very language of the statute must be fairly susceptible of such an interpretation; put otherwise, the saving construction must be one which the court ‘may reasonably find implicit’ in the words used by the Legislature.” (75 NY2d at 52 [citations omitted].)
Accordingly, and consistent with First Amendment principles, this case is hereby dismissed.