OPINION OF THE COURT
 

 Simons, J.
 

 Defendant appeals from an order of the Appellate Term
 
 *533
 
 affirming his conviction, upon a jury verdict, of violating Penal Law § 240.30 (2), aggravated harassment in the second degree. The statute provides: "A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he * * * [m]akes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication.”
 

 Defendant contends that the statute violates the United States and New York State Constitutions because it prohibits constitutionally protected speech, and because it violates his constitutional right to due process. Defendant also maintains that the information charging him with commission of the crime lacked sufficient specificity because it failed to set forth the dates and times of his alleged criminal conduct. Finally, defendant complains that he was deprived of a fair trial because the complaining witness was permitted to testify in violation of the psychologist/patient privilege set forth in CPLR 4507. We hold that the statute is not unconstitutional and find no merit in defendant’s remaining contentions. Accordingly, the order of the Appellate Term should be affirmed.
 

 I
 

 Defendant Julian Shack suffers from mental illness, a fact which he concedes and which was the centerpiece of his defense at his trial. Complainant Diane Buffalin, defendant’s first cousin, is a psychologist who lives and practices in Michigan. In June of 1990, defendant placed a telephone call to Buffalin at her home seeking information regarding his illness and medications and posing questions that arose from his treatment with a psychiatrist in New York. Buffalin, who had had no contact with defendant during the 12 years preceding this phone call, tried to answer his questions. Defendant apparently obtained some benefit from speaking with her, and upon his request she agreed to a continued telephone relationship with him, so long as he remained in treatment with his psychiatrist and continued taking his medication. From June through October, they spoke on the telephone approximately twice each week, and, during a visit to New York that summer, Buffalin "connected” defendant with an anxiety clinic at a New York City hospital.
 

 Toward the end of October of 1990, defendant informed Buffalin that he was "doing better” and that he had stopped
 
 *534
 
 taking medication. She told him that because he was not taking his medication, she no longer welcomed his calls. In response, defendant advised Buffalin that if he ever got angry with her, he could burn down the house of her elderly father (his uncle), who lived in New York City. Through November and into December, defendant continued to call Buffalin. She repeatedly advised him that she did not want to speak with him if he was not taking his medication.
 

 At the end of November, Buffalin informed defendant that she would be undergoing major surgery and told him not to call her during her two-week period of recuperation. On the day of her surgery, defendant called Buffalin three times, and he continued to place calls to her home repeatedly and regularly thereafter. From December 12 through the end of that month, he placed 88 phone calls to her home, sometimes calling as many as seven times a day. Defendant left messages on Buffalin’s answering machine, asserting that if she refused to take his calls, he would begin to place repeated calls to her adult daughter, her mother-in-law and her father. In December, Buffalin wrote defendant a letter in which she tried to make it clear to him that his calls were unwanted, and she advised defendant that she would file a criminal complaint against him if he did not stop calling her.
 

 Defendant continued to telephone Buffalin and records for his residence in Queens County indicate 185 calls to her residence between December 12, 1990 and May 20, 1991. Defendant left messages in which he stated that if she refused to speak with him, he would sell her telephone number to a "pervert” who would delight in calling and upsetting her, that he would place dozens of phone calls to other family members and that he would call the Michigan licensing board to have her psychologist’s license revoked. Buffalin telephoned defendant once in January to implore him to stop calling, and on several occasions she called him and replayed the taped messages of his calls so that he would know that evidence against him was being gathered. Nevertheless, defendant continued to place calls to Buffalin’s home until May of 1991, when Buffalin came to New York and filed a criminal complaint against him. Defendant was arrested, prosecuted and convicted on one count of aggravated harassment in the second degree and sentenced to three years of probation.
 

 
 *535
 
 II
 

 Defendant challenges the constitutionality of the statute on several grounds.
 
 [1]
 

 A
 

 Defendant’s first claim is that the statute is facially unconstitutional because it impermissibly infringes the freedom of expression guaranteed by the First and Fourteenth Amendments of the Federal Constitution and article I, § 8 of the New York Constitution. Even if not facially unconstitutional, defendant maintains that it is unconstitutional as applied to him.
 

 Penal Law § 240.30 (2) does not prohibit speech or expression — on its face, its proscription is limited to conduct (making a telephone call without any legitimate purpose of communication). The limiting clause which expressly excludes constitutionally protected speech from its reach plainly distinguishes this statute from those which impose criminal liability for "pure speech”
 
 (see, e.g., People v Dietze,
 
 75 NY2d 47 [use of "abusive language”];
 
 Cohen v California,
 
 403 US 15, 18 [an epithetic phrase worn on a jacket was not "offensive conduct”];
 
 see also, Walker v Dillard,
 
 523 F2d 3,
 
 cert denied
 
 423 US 906), or "expressive conduct”
 
 (see, e.g., Spence v Washington,
 
 418 US 405 [displaying a peace symbol on an American flag];
 
 cf., People v Hollman,
 
 68 NY2d 202 [nude sunbathing is not expressive conduct]). Accordingly, because Penal Law § 240.30 (2) proscribes only conduct and expressly removes from its application "legitimate communication,” defendant may not invoke the First Amendment or article I, § 8 of the State Constitution to support a challenge to the facial validity of the statute.
 

 Moreover, even if Penal Law § 240.30 (2) is construed to proscribe speech, a declaration of facial overbreadth does not automatically follow. Constitutional free speech protections "have never been thought to give absolute protection to every individual to speak whenever or wherever he pleases, or to use any form of address in any circumstances that he chooses”; a person’s right to free expression may be curtailed "upon a showing that substantial privacy interests are being invaded
 
 *536
 
 in an essentially intolerable manner”
 
 (Cohen v California,
 
 403 US, at 19, 21,
 
 supra).
 
 An individual’s right to communicate must be balanced against the recipient’s right "to be let alone” in places in which the latter possesses a right of privacy
 
 (Rowan v Post Off. Dept.,
 
 397 US 728, 736), or places where it is impractical for an unwilling listener to avoid exposure to the objectionable communication
 
 (see, Lehman v City of Shaker Hgts.,
 
 418 US 298, 302-303). Under some circumstances, the privacy right may "plainly outweigh” the free speech rights of an intruder
 
 (see, Federal Communications Commn. v Pacifica Found.,
 
 438 US 726, 748). As the
 
 Rowan
 
 Court noted in regulating unwanted mail, permitting communications to be foisted upon an unwilling recipient in a private place would be tantamount to licensing a form of trespass, and thus "a mailer’s right to communicate must stop at the mailbox of an unreceptive addressee”
 
 (Rowan v Post Off. Dept.,
 
 397 US, at 736-737,
 
 supra).
 

 The
 
 Rowan
 
 analysis may be extended to Penal Law § 240.30 (2). Manifestly, an individual has a substantial privacy interest in his or her telephone; in the context of a telephone harassment statute, the device is easily conceptualized as the functional equivalent of the mailbox. Thus, to the extent Penal Law § 240.30 (2) limits a caller’s right to free speech, it permissibly subordinates that right to the recipient’s right to be free of unwanted telephone calls. The statute is narrowly drafted and furthers the State’s compelling interest in protecting its citizens from "persons who employ the telephone, not to communicate, but for other unjustifiable motives”
 
 (United States v Lampley,
 
 573 F2d 783, 787;
 
 see also, Gormley v Director, Conn. State Dept. of Probation,
 
 632 F2d 938, 941,
 
 cert denied
 
 449 US 1023).
 

 Nor is the statute unconstitutional as applied to defendant, because it did not subject him to criminal liability for engaging in protected speech; his liability arose from his harassing conduct, not from any expression entitled to constitutional protection. Although defendant claims that he had a legitimate purpose because he placed his calls seeking help for his illness, that argument addresses only those telephone calls placed before Buffalin told him to stop calling her. The manner and substance of defendant’s calls changed dramatically in December, and the information charged him with criminal conduct only after that time. Indeed, defendant does not now deny that the evidence at trial was sufficient to support the
 
 *537
 
 jury’s determination that after December 12, 1990, he called Buffalin with the intent to harass, annoy, threaten or alarm her and that his calls were made with no legitimate communicative purpose
 
 (see, People v Smith,
 
 89 Misc 2d 789, 790,
 
 cert denied
 
 434 US 920). Accordingly, Penal Law § 240.30 (2) is not unconstitutional as applied to defendant.
 

 Defendant further asserts that Penal Law § 240.30 (2) is overbroad because it may impair or chill others’ lawful exercise of free speech rights; it may reasonably be interpreted to prohibit expression which is constitutionally protected
 
 (Grayned v City of Rockford,
 
 408 US 104, 114-115). However, because defendant did not suffer a violation of
 
 his
 
 right to free speech, he may challenge the constitutionality of the statute on the grounds that it impairs the rights of others only if it is "substantially overbroad,” that is, if the statute is so broadly worded that it may reach a substantial amount of constitutionally protected expression
 
 (Houston v Hill,
 
 482 US 451, 458-459;
 
 Broadrick v Oklahoma,
 
 413 US 601, 615;
 
 People v Hollman,
 
 68 NY2d 202, 208-209,
 
 supra).
 

 Defendant does not assert any circumstances in which the language of Penal Law § 240.30 (2) would impermissibly restrain protected speech, only suggesting generally that it would permit criminal prosecution of "any patient who has an argument over the phone with a psychologist, or a provider of any good or service”
 
 (compare, People v Hollman, supra).
 
 His argument overlooks the statutory requirement that the telephone call be made "with no purpose of legitimate communication,” a provision which plainly excludes the vast majority of such calls. It is this limitation which distinguishes Penal Law § 240.30 (2) from other telephone harassment statutes that have been declared constitutionally overbroad
 
 (see, People v Klick,
 
 66 111 2d 269, 362 NE2d 329; see
 
 also, State v Dronso,
 
 90 Wis 2d 110, 279 NW2d 710;
 
 Walker v Dillard,
 
 523 F2d 3,
 
 cert denied
 
 423 US 906,
 
 supra; Radford v Webb,
 
 446 F Supp 608,
 
 affd
 
 596 F2d 1205). Even if the statute may, on rare occasion, reach constitutionally protected expression, we are unable to conclude that the statute’s overbreadth, if any, is substantial and thus defendant may not rely on the theoretical overbreadth of Penal Law § 240.30 (2) to challenge his conviction under the statute
 
 (see, People v Hollman,
 
 68 NY2d, at 209,
 
 supra).
 
 In sum, Penal Law § 240.30 (2) is not overbroad because it does not infringe protected rights of defendant nor chill the exercise of free speech rights by others.
 

 
 *538
 
 B
 

 Defendant further claims the statute is unconstitutionally vague, i.e., that it violates the constitutional right to due process because it fails to give a citizen adequate notice of the nature of proscribed conduct, and permits arbitrary and discriminatory enforcement
 
 (see, People v Bright,
 
 71 NY2d 376, 382;
 
 People v Nelson,
 
 69 NY2d 302, 307;
 
 People v Illardo,
 
 48 NY2d 408, 413-414;
 
 Grayned v City of Rockford,
 
 408 US 104, 108-109,
 
 supra; United States v Harriss,
 
 347 US 612, 617). The essence of defendant’s argument is that the subjective term "legitimate” contained in the statutory clause "no purpose of legitimate communication” is incapable of precise definition.
 

 Defendant claims that the statute does not adequately apprise ordinary citizens that phone calls made to "vent anger” or to "inform someone that an attempt would be made to revoke a professional license” would fall within its proscription. As one whose conduct clearly fell within the ambit of the statute, defendant may not assert a due process challenge on the grounds that the statute may be vague when applied to the potential conduct of others
 
 (see, Broadrick v Oklahoma,
 
 413 US, at 608,
 
 supra; People v Nelson,
 
 69 NY2d, at 308,
 
 supra).
 
 Accordingly, we now address only his contention that the statute was vague with respect to his conduct.
 

 Whether a statute is unconstitutionally vague is measured by whether it provides notice to "a person of ordinary intelligence * * * that his contemplated conduct is forbidden by the statute”
 
 (United States v Harriss,
 
 347 US, at 617,
 
 supra; People v Cruz,
 
 48 NY2d 419, 423-424). The legislative use of inherently imprecise language, however, does not render a statute fatally vague if that language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices”
 
 (United States v Petrillo,
 
 332 US 1, 8;
 
 see also, Miller v California,
 
 413 US 15, 27-28, n 10, quoting
 
 Roth v United States,
 
 354 US 476, 491-492;
 
 People v Illardo,
 
 48 NY2d, at 414,
 
 supra; City of Albany v Lee,
 
 53 NY2d 633). Measuring the phrase "no purpose of legitimate communication” by these standards, we are satisfied that the phrase, notwithstanding its subjective quality, would be understood to mean the absence of expression of ideas or thoughts other than threats and/or intimidating or coercive utterances.
 

 Moreover, insofar as defendant contends that Penal Law § 240.30 (2) fails to put citizens on notice of what they may not
 
 *539
 
 do, the challenged clause cannot be viewed in isolation, for it is but one element of a statute that gives greater definition to the proscribed conduct. Specifically, the statute prohibits one from making such telephone calls "with intent to harass, annoy, threaten or alarm another person” (Penal Law § 240.30). By including a specific intent element in the statute, the Legislature has removed the possibility that a defendant could be unaware of his criminal conduct
 
 (see, Screws v United States,
 
 325 US 91, 101-102;
 
 United States v Lampley,
 
 573 F2d 783, 787,
 
 supra; cf., People v Bright,
 
 71 NY2d, at 383-384,
 
 supra).
 
 This specific intent element also removes the possibility that criminal liability would be imposed based on the unascertainable sensitivities of the victim
 
 (compare, Coates v City of Cincinnati,
 
 402 US 611, 613-614;
 
 see, e.g., Constantino v State,
 
 243 Ga 595, 598, 255 SE2d 710, 713).
 

 Further, we find no possibility of arbitrary enforcement. The combination of the described standards and the clear and understandable elements of the criminal conduct adequately defines the criminal conduct for the police officers, Judges and juries who will enforce the statute. Notably, because of the very nature of the conduct proscribed by Penal Law § 240.30 (2), enforcement of the statute is unlikely to occur in the absence of a victim’s complaint to authorities. Given the opportunity to consider the veracity of the complainant and to engage in preliminary investigation, this statute vests no more discretion in the police than any other statute which proscribes malevolence or misconduct toward another person
 
 (compare, People v Bright, supra
 
 [statute required loiterer to give police officer a "satisfactory explanation of his presence”]). We conclude that the statute adequately describes an element of the proscribed conduct, and provides sufficient notice to potential offenders and sufficient guidelines to those who would enforce the statute and that defendant has failed to overcome the presumption of validity which attaches to legislative enactments
 
 (see, People v Bright,
 
 71 NY2d, at 382,
 
 supra).
 

 [2]
 

 Ill
 

 Defendant claims that the accusatory instrument was defective for lack of specificity because it did not identify the
 
 *540
 
 particular dates on which he was alleged to have made harassing telephone calls. Defendant was charged with one count of aggravated harassment in the second degree by an information which alleged that he "on or about and between December 12, 1990 & May 20, 1991 in the County of Queens, with the intent to harass, annoy, threaten and alarm Diane Buffalin, did make a series of telephone calls to Diane Buffalin with no purpose of legitimate communication.” The People contend that the information’s allegation that the criminal conduct occurred over a six-month period should not result in dismissal for lack of specificity because Penal Law § 240.30 (2) may be characterized as a continuing crime. We agree.
 

 Each count in a charging instrument must state "that the offense charged therein was committed on, or on or about, a designated date, or during a designated period of time” (CPL 200.50 [6]). This requirement, along with others set forth in CPL 200.50, serves three purposes: to provide the accused with fair notice of the nature of the charge against him so that he may prepare his answer and defense to the charge; to ensure that the crime for which defendant is tried before the petit jury is in fact the crime with which he was charged; and, to identify the criminal conduct with sufficient specificity so that defendant, if convicted, may raise a double jeopardy claim as a bar to subsequent prosecution for the same conduct
 
 (People v Sanchez,
 
 84 NY2d 440, 445;
 
 see also, People v Charles,
 
 61 NY2d 321, 326-327;
 
 People v Iannone,
 
 45 NY2d 589, 594). When defendant is charged with a crime that is perpetrated by commission of a single act and time is not a substantive element of the crime charged, the allegation of when that act was committed must be reasonably specific in light of all the circumstances of the particular case
 
 (see, People v Morris,
 
 61 NY2d 290, 295-296;
 
 see also, People v Keindl,
 
 68 NY2d 410, 419-420). When a crime may be committed by multiple acts over time and is amenable to characterization as a "continuing crime,” however, the count in the charging instrument may properly allege that the single offense was committed over a significant period of time
 
 (see, People v Keindl,
 
 68 NY2d, at 421-422,
 
 supra; see also, People v First Meridian Planning Corp.,
 
 86 NY2d 608, 615-616 [decided today]).
 

 A continuing crime is one "that by its nature may be committed either by one act or by multiple acts and readily permits characterization as a continuing offense over a period of time”
 
 (People v Keindl, supra,
 
 at 421). Whether multiple acts may be charged as a continuing crime is resolved by
 
 *541
 
 reference to the language in the penal statute to determine whether the statutory definition of the crime necessarily contemplates a single act
 
 (see, People v Keindl, supra,
 
 at 421-422;
 
 see also, Matter of Johnson v Morgenthau,
 
 69 NY2d 148). Guidance is also obtained from analysis of whether the Legislature intended to prohibit a course of conduct or only specific, discrete acts
 
 (see, People v Okafore,
 
 72 NY2d 81, 86-87).
 

 By its terms, Penal Law § 240.30 (2) imposes criminal liability for making a single telephone call, if placed with the requisite intent and lack of legitimate purpose. While a defendant may annoy, harass, or, more likely, threaten or alarm another person with a single telephone call, the statute does not
 
 necessarily
 
 contemplate a single act. The use of the terms “harass” and "annoy” are easily susceptible of describing multiple acts occurring over a period of time. Indeed, Penal Law § 240.30 (2) derives from, and was intended to be broader than, former Penal Law § 1423 (6) which was directed to tieing up business telephone lines by repeated calling. In revising the statute, the Legislature intended to proscribe repeated telephone calls to a residence that might "driv[e] a person to distraction”
 
 (see,
 
 Staff Notes of Commn on Revision of Penal Law, reprinted in CLS NY Statutes, vol 23B, Penal Law § 240.30, at 261). Thus, despite the statutory reference to a single phone call, the provision and its history readily permit characterization as a continuing offense over time
 
 (compare, People v Sanchez,
 
 84 NY2d 440, 448,
 
 supra
 
 [crime of fortune telling completed each time a person answers a question or gives advice]). Given the circumstances of this case, the superior court information that charged defendant with making a series of phone calls to a specific person over a six-month period adequately advised defendant of the conduct for which he was charged and the purposes of the specificity rule were achieved: he was able to defend the charges, his trial was conducted according to the conduct alleged in the information, and he will have sufficient information to fend off any subsequent attempts to reprosecute him for the same conduct.
 

 Finally, defendant contends that he was deprived of a fair trial by the introduction of evidence of defendant’s mental illness through the testimony of Buffalin because her testimony violated the psychologist/patient privilege which attended their relationship
 
 (see,
 
 CPLR 4507). Asserting the existence of a psychologist/patient relationship, defense counsel successfully obtained a pretrial ruling that Buffalin could not testify about defendant’s condition or medication unless
 
 *542
 
 defendant opened the door to such testimony. Subsequently, however, defense counsel affirmatively injected the issue of defendant’s mental illness into the trial during her opening statement, and thereafter raised no relevant objection to Buffalin’s testimony. Thus, defendant’s contention that the trial court erroneously permitted such testimony is not preserved for this Court’s review.
 

 IV
 

 In sum, we conclude that Penal Law § 240.30 (2) does not violate the constitutional right to free speech, and it does not suffer from vagueness. The statute is amenable to characterization as a continuing crime, and in this case, the charging instrument adequately advised defendant of the time period during which he was alleged to have harassed his victim.
 

 Accordingly, the order of the Appellate Term should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed.
 

 [1]
 

 . Defendant does not contend that the Free Speech or Due Process Clauses of the New York State Constitution afford greater protection than those of the Federal Constitution. Accordingly, our analysis assumes the requirements of both documents are the same.
 

 [2]
 

 . This statute has once before withstood a constitutional challenge in an intermediate appellate court
 
 (see, People v Smith,
 
 89 Misc 2d 789,
 
 cert denied
 
 434 US 920,
 
 supra).