■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAPHAEL GOLB, Appellant. [960 NYS2d 66]—

Judgment, Supreme Court, New York County (Carol Berkman, J.), rendered November 18, 2010, convicting defendant, after a jury trial, of identity theft in the second degree (two counts), criminal impersonation in the second degree (14 counts), forgery in the third degree (10 counts), aggravated harassment in the second degree (three counts), and unauthorized use of a computer, and sentencing him to an aggregate term of six months, unanimously modified, on the law and facts, to the extent of vacating the identity theft conviction under the first count of the indictment and dismissing that count, and otherwise affirmed. The matter is remitted to Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).

Defendant's convictions arise out of his use of emails to impersonate actual persons. Nothing in this prosecution, or in the court's jury charge, violated defendant's First Amendment or other constitutional rights.

Defendant is the son of an expert on the Dead Sea Scrolls. Defendant set up email accounts in which he pretended to be other scholars who disagreed with defendant's father's opinion on the origin of the Scrolls. Among other things, defendant sent emails in which one of his father's rivals purportedly admitted to acts of plagiarism.

Defendant's principal defense was that these emails were

only intended to be satiric hoaxes or pranks. However, as it has been observed in the context of trademark law, "[a] parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody" (*Cliffs Notes, Inc. v Bantam Doubleday Dell Pub. Group, Inc.*, 886 F2d 490, 494 [2d Cir 1989] [emphasis omitted]). Here, the evidence clearly established that defendant never intended any kind of parody. Instead, he only intended to convey the first message to the readers of the emails, that is, that the purported authors were the actual authors. It was equally clear that defendant intended that the recipients' reliance on this deception would cause harm to the purported authors and benefits to defendant or his father.

The court's charge, which incorporated many of defendant's requests, fully protected his constitutional rights, and the court was not required to grant defendant's requests for additional instructions. The court carefully informed the jury that academic discussion, parody, satire and the use of pseudonyms were protected by the First Amendment.

The court also ensured that the jury understood the terms "fraud" and "defraud" by expanding their definition and advised the jury that "without the intent to deceive or defraud as to the source of the speech with the intent to reap a benefit from that deceit, there is no crime." The court was under no obligation to limit the definitions of "injure" or "defraud"—terms used in the forgery and criminal impersonation statutes—to tangible harms such as financial harm (*see People v Kase*, 76 AD2d 532, 537-538 [1st Dept 1980], *affd* 53 NY2d 989 [1981]). The court also properly employed the statutory definition of "benefit" as "any gain or advantage" to defendant or to another person (Penal Law § 10.00 [17]).

Defendant argues that it is constitutionally impermissible to include an intent to influence a constitutionally-protected academic debate within the concept of fraud, injury or benefit, that allowing injury to reputation to satisfy the injury element would effectively revive the long-abandoned offense of criminal libel, and that, in any event, the alleged truth of the content of the emails should have been permitted as a defense. However, the evidence established that defendant intended harm that fell within the plain meaning of the term "injure," and that was not protected by the First Amendment, including damage to the careers and livelihoods of the scholars he impersonated. Defendant also intended to create specific benefits for his father's career. The fact that the underlying dispute between defendant and his father's rivals was a constitutionally-protected debate

does not provide any First Amendment protection for acts that were otherwise unlawful.

Defendant was not prosecuted for the content of any of the emails, but only for giving the false impression that his victims were the actual authors of the emails. The First Amendment protects the right to criticize another person, but it does not permit anyone to give an intentionally false impression that the source of the message *is* that other person (*see SMJ Group, Inc. v 417 Lafayette Rest. LLC*, 439 F Supp 2d 281 [SD NY 2006]).

We have considered and rejected defendant's remaining arguments concerning the court's charge. We similarly reject his claims that the statutes under which he was convicted were unconstitutionally vague or overbroad. None of these statutes was vague or overbroad on its face or as applied (*see People v Shack*, 86 NY2d 529, 538 [1995]; *Broadrick v Oklahoma*, 413 US 601, 611-616 [1973]). The People were required to prove that defendant had the specific fraudulent intent to deceive email recipients about his identity, and to obtain benefits or cause injuries as a result of the recipients' reliance on that deception. The statutes criminalized the act of impersonation and its unlawful intent, not the content of speech falsely imputed to the victims.

The verdict was based on legally sufficient evidence and was not against the weight of the evidence, with the exception of the identity theft conviction under the first count. The theory of that count was that in the commission of identity theft in the second degree (Penal Law § 190.79 [3]), defendant attempted to commit the felony of scheme to defraud in the first degree (Penal Law § 190.65 [1] [b]). However, there was no evidence that defendant intended to defraud one or more persons of property in excess of $1,000 or that he attempted to do so (*see id.*). The People's assertions in this regard rest on speculation. Concur— Mazzarelli, J.P., Renwick, Richter, Gische and Clark, JJ.