Smith, J.
(dissenting). Albany County has conceded that certain provisions of its Cyber-Bullying law are invalid. It seems to me that those provisions can be readily severed from the rest of the legislation and that what remains can, without any strain on its language, be interpreted in a way that renders it constitutionally valid.
The operative provision of the law says simply: “No person shall engage in cyber-bullying against any minor or person in the County of Albany.” The County does not defend the law as it applies to adults, and the majority acknowledges that we may consider the statute as if the words “or person” were deleted (majority op at 11). But the majority finds irreparable constitutional flaws in the definition of Cyber-Bullying, which is as follows:
“ ‘CYBER-BULLYING’ shall mean any act of communicating or causing a communication to be sent by mechanical or electronic means, including posting statements on the internet or through a computer or email network, disseminating embarrassing or sexually explicit photographs; disseminating private, personal, false or sexual information, or sending hate mail, with no legitimate private, personal, or public purpose, with the intent to *13 harass, annoy, threaten, abuse, taunt, intimidate, torment, humiliate, or otherwise inflict significant emotional harm on another person.”
The County concedes that the words “embarrassing” and “hate mail” are “vague and thus unenforceable” (brief of intervenor-respondent Albany County [County Brief] at 8 n 4). It argues, correctly I think, that these terms can be dealt with in the same way as the reference to “person” in the operative section: simply by crossing them out. Once these deletions are made, I see nothing in the law that renders it unconstitutional.
The majority, it seems, is troubled by two other aspects of the definition of “Cyber-Bullying”: the requirement that the forbidden communications be made “with no legitimate private, personal, or public purpose”; and the series of verbs — “harass, annoy, threaten, abuse, taunt, intimidate, torment, humiliate”— that precedes the words “or otherwise.” Neither requires us to invalidate the law.
I grant that the words “no legitimate . . . purpose” are not remarkable for their precision. We have twice held, however, that they are clear enough to withstand a constitutional challenge for vagueness (People v Shack, 86 NY2d 529, 533, 538 [1995] [holding valid a prohibition on the making of a telephone call “with intent to harass, annoy, threaten or alarm another person . . . with no purpose of legitimate communication”]; People v Stuart, 100 NY2d 412, 428 [2003] [holding valid an anti-stalking statute prohibiting a described course of conduct when engaged in “for no legitimate purpose”]). We said in Shack:
“the phrase ‘no purpose of legitimate communication’ . . . notwithstanding its subjective quality, would be understood to mean the absence of expression of ideas or thoughts other than threats and/or intimidating or coercive utterances.” (86 NY2d at 538.)
Similarly here, the phrase “no legitimate purpose” should be understood to mean the absence of expression of ideas or thoughts other than the mere abuse that the law proscribes.
It is true, as the majority says (majority op at 11 n 4) that the criminal conduct at issue in Shack and Stuart was different from the conduct at issue here — but that does not make the words “no legitimate purpose” any more or less vague. The majority is also correct in saying that “the First Amendment *14 forbids the government from deciding whether protected speech qualifies as ‘legitimate’ ” (majority op at 11), but this begs the central question of what speech is “protected” and what is not. The Cyber-Bullying law prohibits a narrow category of valueless and harmful speech when the government proves, among other things, that the speaker had no legitimate purpose for engaging in it. The speech so prohibited is not protected speech.
As for the list of verbs beginning with “annoy” and ending with “humiliate,” it is fair to read them, as the County urges, as “a non-exhaustive list of ways that the wrongdoer may formulate his or her intent to inflict emotional harm on the victim” (County Brief at 8). In other words, the acts within the scope of the Cyber-Bullying law — disseminating sexually explicit photographs or private, personal, false or sexual information— are prohibited only where they are intended to “inflict significant emotional harm” on the victim, and the verbs merely serve as examples of ways in which significant emotional harm may be inflicted. That is not the only possible way to read the text of the law, but it is a perfectly reasonable way — indeed, the word “otherwise” seems to signal that the verbs preceding it are only illustrative. So read, the law does not prohibit conduct intended to harass, annoy, threaten or the like unless the actor specifically intended “significant emotional harm.” I do not find such a prohibition to be unconstitutionally vague or overbroad.
In short, I think the majority makes too much of what it sees as flaws in the draftsmanship of the Cyber-Bullying law. The crux of the case, in my view, is whether Albany County constitutionally may do what it is trying to do — to prohibit certain kinds of communication that have no legitimate purpose and are intended to inflict significant emotional injury on children. The answer to this question is not self-evident. The First Amendment protects some extremely obnoxious forms of speech, including insults offered to a dead soldier at his funeral (Snyder v Phelps, 562 US —, 131 S Ct 1207 [2011]) and horrifyingly violent video games marketed to teenagers (Brown v Entertainment Merchants Assn., 564 US —, 131 S Ct 2729 [2011]). But Snyder itself makes clear that speech designed to inflict serious emotional injury is protected only when, as in Snyder, the speech is directed at a matter of public concern:
“Whether the First Amendment prohibits holding Westboro liable for its speech in this case turns largely on whether that speech is of public or private *15 concern, as determined by all the circumstances of the case. . . . [Restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest” (562 US at —, 131 S Ct at 1215; see also Hustler Magazine, Inc. v Falwell, 485 US 46, 53 [1988] [speech about a “public figure” is constitutionally protected even if uttered with intent to cause emotional distress because regulation of emotionally harmful speech about public figures would chill debate on public matters]).
It is thus clear that the emotional abuse involved in Snyder would not have been constitutionally protected if, like Marquan’s remarks about his fellow students, it had referred to no matter of public importance and had been uttered purely out of private rage or spite. And the victims of the abuse in Snyder were adults; in that respect, the present case is a fortiori. The Albany County Cyber-Bullying law is valid.
Chief Judge Lippman and Judges Read, Rivera and AbdusSalaam concur with Judge Graffeo; Judge Smith dissents in an opinion in which Judge Pigott concurs.
Order reversed and accusatory instrument dismissed.