16-258-cv
Barboza v. D'Agata

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of January, two thousand seventeen.

PRESENT:   REENA RAGGI,
                       DENNY CHIN,
                       RAYMOND J. LOHIER, JR.,
                                  *Circuit Judges*.
------------------------------------------------------------------------
WILLIAN BARBOZA,
                          *Plaintiff-Appellant*,


                       v.                                                      No. 16-258-cv


DETECTIVE STEVEN D'AGATA, sued in his individual capacity, POLICE OFFICER MELVIN GORR, sued in his individual capacity,
                          *Defendants-Appellees*,


ROBERT ZANGLA, sued in his individual capacity, VILLAGE OF LIBERTY,
                          *Defendants*.[*]
------------------------------------------------------------------------
APPEARING FOR APPELLANT:          STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, Chester, New York.

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

APPEARING FOR APPELLEES:     STEPHEN J. GABA (Adam L. Rodd, *on the brief*), Drake Loeb, PLLC, New Windsor, New York.

FOR AMICUS CURIAE:     Matthew D. McGill, Gibson, Dunn & Crutcher LLP, Washington, D.C.; Goutam U. Jois, Darcy C. Harris, Gibson, Dunn & Crutcher LLP, New York, New York, *for amicus curiae* The Legal Aid Society.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered pursuant to Fed. R. Civ. P. 54(b) on January 22, 2016, is AFFIRMED.

Plaintiff Willian Barboza appeals from an award of summary judgment, based on qualified immunity, in favor of defendants Detective Steven D'Agata and Police Officer Melvin Gorr. We review a summary judgment award *de novo* and will affirm only if the record, viewed in the light most favorable to the non-movant, shows no genuine dispute of material fact and the movant's entitlement to judgment as a matter of law. *See Jackson v. Fed. Express*, 766 F.3d 189, 193–94 (2d Cir. 2014). In conducting our review, we assume the parties' familiarity with the facts and record of prior proceedings. Nevertheless, some background is necessary to explain our decision to affirm.

Barboza sued D'Agata and Gorr pursuant to 42 U.S.C. § 1983, alleging false arrest and violation of free speech insofar as he was taken into custody on October 18, 2012, for

2

aggravated harassment in the second degree, *see* N.Y. Penal Law § 240.30(1),[1] based on his writing vulgar and obscene words on a traffic-citation payment form that he returned to the Liberty Town Clerk's Office in August 2012 when paying a fine for admitted speeding.[2] Clerk's Office employees, upset by Barboza's returned payment form, brought it to the attention of Town Judge Brian Rourke who, thinking the words written thereon might be construed as a threat to the all-female staff, referred the matter to Sullivan County Assistant District Attorney Robert Zangla.[3] Judge Rourke then advised Barboza in writing that his payment was not accepted and ordered him to appear in court on October 18, 2012. Zangla meanwhile reviewed Barboza's communication with District Attorney James Farrell, in the course of which they discussed the possibility of Barboza having a First Amendment defense to an aggravated harassment charge. In the end, Farrell instructed Zangla to file such a charge. Zangla planned to do so at

---

[1] At the relevant time, Penal Law § 240.30 stated as follows:

> A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she: 1. (a) communicates with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm.

*See People v. Golb*, 23 N.Y.3d 455, 466–67, 991 N.Y.S.2d 792, 800 (2014); *People v. Mangano*, 100 N.Y.2d 569, 570, 764 N.Y.S.2d 379, 380 (2003).

[2] Specifically, Barboza crossed out "Liberty," the name of the town, and substituted "Tyranny," and wrote in capital letters "FUCK YOUR SHITTY TOWN BITCHES."

[3] Zangla was also a named defendant in this action. He, along with fellow defendant Town of Liberty, settled this action. Thus, we have no reason to review the district court's denial of the parties' cross-motions for summary judgment as to the Town and award of summary judgment for Barboza as against Zangla.

Barboza's October 18 court appearance, at which time he intended for Barboza to be arrested. On October 18, Zangla showed Barboza's payment form to defendant D'Agata, who was then providing security at the Town Court. Zangla told D'Agata that the court clerks felt threatened by the communication, and he instructed D'Agata to draft an information charging Barboza with aggravated harassment. D'Agata did so, quoting Barboza's offensive comments in support of the charge, whereupon Zangla reviewed and approved the information. D'Agata then requested defendant Gorr's assistance in arresting Barboza, which the officers did after submitting the information to Judge Rourke, who provided a copy to Barboza, reprimanded him for his comments on the payment form, and advised that he would be arrested. Judge Rourke then recused himself from the matter, whereupon Barboza was taken to the neighboring Town of Fallsburg, where he was arraigned by a judge of that town, who assigned him counsel and set $200 bail, which Barboza posted that day, resulting in his release. Barboza subsequently moved to dismiss the charge on First Amendment grounds, which motion was granted by a Fallsburg judge on March 22, 2013.

Barboza argues that defendants are not entitled to qualified immunity. Qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013). Two questions inform qualified immunity analysis. First, do the facts show that the officer's conduct violated plaintiff's

4

constitutional rights?  Second, if there was a constitutional violation, was the right clearly established at the time of the officer's actions?  *See Ashcroft v. al-Kidd*, 563 U.S. at 735; *Zalaski v. City of Hartford*, 723 F.3d at 388.   For law to be clearly established, it is not necessary to identify a case directly on point.  But precedent must have spoken with sufficient clarity to have placed the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. at 741; *accord Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

In determining whether a right was so clearly established, the Supreme Court has emphasized that the "dispositive inquiry . . . is whether it would be clear to a *reasonable officer* that his conduct was unlawful *in the situation he confronted.*"  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (emphases added); *Mullenix v. Luna*, 136 S. Ct. at 308; *Zalaski v. City of Hartford*, 723 F.3d at 389; *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007). In short, a clearly established right is not identified by reference to how courts or lawyers might have understood the state of the law.   Nor is it sufficient for a right to have been established generally or in a context distinct from that at issue.   Rather, at the second step inquiry, "[e]ven if the right at issue was clearly established *in certain respects*, . . . an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue *in its particular factual context.*"   *Walczyk v. Rio*, 496 F.3d at 154 (emphases added) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *accord Zalaski v. City of Hartford*, 723 F.3d at 389.[4]

---

[4] To the extent the district court treated the identification of a clearly established right and the objective reasonableness of defendants' conduct as distinct inquiries and

5

As these precedents indicate, qualified immunity is a broad shield specifically designed to give public officials "breathing room to make reasonable," even if sometimes "mistaken judgments" without fear of facing disabling liability. *Messerschmidt v. Millender* 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted). Toward that end, the standard of review is deliberately "forgiving," *Zalaski v. City of Hartford*, 723 F.3d at 389, providing "ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. at 341; *accord Ashcroft v. al-Kidd*, 563 U.S. at 743. Defendants fall into neither of these categories.

In urging otherwise, Barboza contends that, at the time defendants arrested him, he had a clearly established First Amendment right to engage in the vulgar and obscene speech at issue despite N.Y. Penal Law § 240.30(1). In support, he points, as the district court did, to *People v. Mangano*, 100 N.Y.2d 569, 764 N.Y.S.2d 379 (2003), in which the New York Court of Appeals held that § 240.30(1) could not constitutionally be applied to a defendant's conduct in leaving recorded telephone messages with a municipal parking

concluded that identification of a clearly established right in the context at issue did not necessarily preclude qualified immunity based on the third inquiry, it misread our precedent. *See Zalaski v. City of Hartford*, 723 F.3d at 388–89 (identifying two-inquiry analysis and observing that qualified immunity may not attach where right is clearly established in particular context); *Walczyk v. Rio*, 496 F.3d at 154 & n.16 (identifying two-inquiry analysis and explaining why concurring opinion's objection to characterization of second inquiry is unfounded). There is no need for us to clarify the two-inquiry standard in a published opinion as *amicus* urges because we have already done so. *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 n.11 (2d Cir. 2009) (observing that, despite some cases that might appear to frame it in disjunctive, "'objectively reasonable' inquiry is part of the 'clearly established' inquiry"). We here need explain only why, on a correct application of the two-step inquiry, defendants are nevertheless entitled to qualified immunity. *See Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (reiterating authority to affirm on any ground supported by record).

bureau that "rained invective on two village employees, wished them and their families ill health, and complained of their job performance, as well as tickets that she had received," *id.* at 570, 764 N.Y.S.2d at 380. The court held such speech protected by the First Amendment because it was "made in the context of complaining about government actions, on a telephone answering machine set up for the purpose . . . of receiving complaints from the public." *Id.* at 571, 764 N.Y.S.2d at 380.

Assuming without deciding that state court decisions can clearly establish a constitutional right, we note that *Mangano* did not hold § 240.30(1) violative of the First Amendment in all respects. To the contrary, *Mangano* only distinguished—but did not overrule—*People v. Shack*, 86 N.Y.2d 529, 634 N.Y.S.2d 660 (1995), in which the Court of Appeals upheld a conviction for telephone harassment under § 240.30(2), concluding that liability arose from defendant's "harassing conduct, not from any expression entitled to constitutional protection," *id.* at 536, 634 N.Y.S.2d at 665. By contrast, *Mangano* explained that the crude messages there at issue were "made in the context of complaining about government actions, on a telephone answering machine set up for the purpose (among others) of receiving complaints from the public," which did not "fall within any of the proscribable classes of speech or conduct." 100 N.Y.2d at 571, 764 N.Y.S.2d at 380.

This case is not "on all fours" with *Mangano*, as the district court concluded. S.P.A. 13. Barboza did not transmit his offensive communication through a channel "set up for the purpose . . . of receiving complaints from the public." Rather, he wrote his profane message on a government form the principal purpose of which was to

7

transmit payment for a traffic offense to which he had already pleaded guilty. The recipients of his invective were employees charged with the clerical processing of such payments, not with receiving public complaints. This is not to conclude that such communications are not entitled to constitutional protection from § 240.30(1) prosecution. We observe only that neither *Mangano* nor any other case clearly established such a First Amendment right at the time of the events at issue. *See generally Vives v. City of New York*, 405 F.3d 115, 117–18 (2d Cir. 2005) (observing that § 240.30(1) had not been held unconstitutional on its face and declining to reach question where defendants were entitled to qualified immunity). It was only later, in 2014, that the New York Court of Appeals would clarify that § 240.30(1) was unconstitutionally vague on its face, violating the speech protections of both the state and federal constitutions. *See People v. Golb*, 23 N.Y.3d 455, 467, 991 N.Y.S.2d 792, 800–01 (2014).[5]

To be sure, the Supreme Court has long recognized that freedom of speech is "protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Terminiello v. City of Chicago,* 337 U.S. 1, 4 (1949); *see City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "True threats" are recognized as such a

---

[5] After *Golb*, § 240.30(1) was amended so that a person is guilty of second degree aggravated harassment when, "[w]ith intent to harass another person, the actor . . . communicates . . . a threat to cause physical harm to, or unlawful harm to the property of, such person . . . and the actor knows or reasonably should know that such communication will cause such person to reasonably fear harm to such person's physical safety or property."

danger, which thus can be banned without violating the First Amendment. *Virginia v. Black*, 538 U.S. 343, 359 (2003). Such threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," even if the speaker does "not actually intend to carry out the threat." *Id.* at 359–60. Consistent with these principles, the New York Court of Appeals struck down a subsection of the first-degree harassment statute, which had prohibited "abusive or obscene" language, stating that "any proscription of pure speech must be sharply limited to words which, by their utterance alone, inflict injury or tend naturally to evoke immediate violence." *People v. Dietze*, 75 N.Y.2d 47, 52, 550 N.Y.S.2d 595, 597 (1989).

Defendants do not argue that a § 240.30(1) arrest could be premised on anything less than probable cause to believe that a communication was intended to inflict such injury or evoke such violence. Rather, they argue that a reasonable officer could have believed there was probable cause to think Barboza intended to threaten injury through his communication because (1) harm was implied by the obscenity used, a conclusion reinforced by the vulgarity that could be read to describe the female employees who received Barboza's message; (2) the communication seemed irrational given that (a) Barboza had already pleaded guilty to the charged speeding offense; (b) the speeding ticket had been given to him by a state trooper and not any town employee; (c) the fine he was required to pay was set by the state, not the town; and (d) the particular employees who received Barboza's form performed only clerical processing of his payment; (3) the employees who received the communication were sufficiently upset to bring it to the

9

attention of a town judge; (4) the town judge thought the communication could be construed as a threat and, therefore, referred it to the district attorney; (5) the district attorney, although recognizing a possible First Amendment defense, nevertheless, concluded that the communication was sufficiently threatening to order the filing of an aggravated harassment charge; (6) the assistant district attorney who shared the communication with defendant D'Agata characterized it as a threat and directed the officer's preparation of an aggravated harassment information, which the assistant district attorney reviewed and approved; (7) the information was also reviewed by the town judge who first referred the matter, who advised Barboza that he was to be arrested based on the information; and (8) the information was again reviewed by a neighboring town judge who arraigned Barboza on the charge, ordering him detained pending the posting of bail.

On the totality of these circumstances, we cannot conclude that no reasonable officer in the position of defendants D'Agata and Gorr could have believed that Barboza could be arrested for aggravated harassment without violating the First Amendment. As already explained, precedent did not clearly establish the unconstitutional facial vagueness of § 240.30(1) until 2014. Rather, at the time at issue, New York's Court of Appeals had recognized both permissible and impermissible applications of the statute. Thus, existing precedent did not yet place the question of § 240.30(1)'s constitutional application to the circumstances of this case beyond debate. Further, an assistant district attorney, after discussing the matter with the district attorney, advised the officers that Barboza's communication was threatening and warranted a § 240.30(1) charge (and,

10

indeed, directed its filing). That conclusion was reinforced by the actions of two judges, one of whom, after reviewing the charging information, advised Barboza that he was about to be arrested, and the second of whom, upon similar review, arraigned and detained Barboza on the charge. An officer is not automatically entitled to qualified immunity simply because prosecutors or magistrates approve a challenged arrest; he can still be subject to suit if "it is obvious that no reasonably competent officer would have concluded" that a lawful arrest could be made. *Malley v. Briggs*, 475 U.S. at 341. But the threshold for reaching that conclusion "is a high one" that is not easily satisfied where a challenged charging instrument is approved by both a prosecutor and magistrates. *Messerschmidt v. Millender*, 132 S. Ct. at 1245. The error here—a matter of constitutional law—was not one officers could be expected to identify at "a simple glance." *See id.* at 1250 (internal quotation marks omitted); *see also Amore v. Novarro*, 624 F.3d 533, 534–35 (2d Cir. 2010) (observing that police officers are not expected to be lawyers or prosecutors and, in deciding what reasonable person in their position would know about constitutionality of conduct, courts do not ask what lawyer would intuit from researching case law). In these circumstances, "[t]he fact that none of the officials who reviewed [a charging instrument] expressed concern about its validity demonstrates that any error was not obvious." *Messerschmidt v. Millender*, 132 S. Ct. at 1250.

Accordingly, we conclude that the defendant police officers are entitled to qualified immunity, not because—as the district court ruled—the First Amendment right violated was clearly established but the officers' conduct was nevertheless objectively reasonable, but rather because a First Amendment right to engage in the charged conduct

11

in the circumstances of this case was *not* yet clearly established so that no reasonable officer could have thought (even if mistakenly) that Barboza could lawfully be arrested for aggravated harassment in violation of N.Y. Penal Law § 240.30(1).

We have considered Barboza's remaining arguments and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court