People v Sanin (2025 NY Slip Op 25189)

[*1]

People v Sanin

2025 NY Slip Op 25189

Decided on August 8, 2025

County Court, Ulster County

Farrell, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 8, 2025
County Court, Ulster County

The People of the State of New York

against
Jamie Sanin and CHARLIE LIU GUILLOTIN, Defendants.

Ind. No. 70114-25

The People of the State of New York: Ulster County District Attorney's Office
Defendants: Michael Sussman, Esq.

James R. Farrell, J.

This matter comes before the Court on defendants' motion to dismiss the indictment on the grounds that (1) the indictment is an infringement on their First Amendment Rights to free speech, and for a declaration that Penal Law §145.60 is constitutionally vague and overly broad; and (2) the first count of the indictment charging defendants with Criminal Mischief in the Second Degree (Penal Law §145.10) is duplicative of count two, which charges defendants with Making Graffiti (Penal Law §145.60). Alternatively, defendants request authority to present a necessity defense to the jury. The People appear and oppose the relief requested. 
Background and Procedural History
Defendants, Jamie Sanin and Charlie Liu Guillotin, former SUNY New Paltz students, were indicted on charges of Criminal Mischief in the Second Degree (Penal Law §145.10]), Making Graffiti (Penal Law §145.65) and Possession of Graffiti Instruments (Penal Law §145.65) stemming from allegations that on October 6, 2024, they spray painted graffiti at various locations on SUNY New Paltz Campus with phrases such as "Your Tuition Funds Genocide" and "Free Gaza" and posted two posters containing similar statements. Two suspects wearing black coats with black hoods and black surgical masks were observed on surveillance video. A patrol officer observed two individuals matching the suspects' descriptions and ordered them to stop walking. The patrol officer smelled the strong odor of spray paint on the suspects, one suspect had spray paint on their clothing, and other suspect was carrying a shopping bag containing several cans of spray paint. The suspects, identified as defendants herein, were arrested and issued appearance tickets. Defendants were also issued "persona non grata" letters and advised not to return to campus lest they be subject to arrest for criminal trespass. [*2]Defendants now move to dismiss the indictment. 
Instant Motion
Defendants first assert a First Amendment constitutional challenge to Penal Law §145.60, Making Graffiti; however, they seem to conflate the various applicable standards of review when one challenges a statute on First Amendment grounds as overly board, vague, content neutral or "as-applied." Defendants argue that the statute is overboard and vague because it presumes intent and prohibits all forms of expressive speech. Defendants then cite to the standards of review applied in the context of content neutral statutes, as well as the standard of review for First Amendment challenges to a statute "as applied" to defendants, who were engaged in political speech in an alleged public forum. Defendants then argue that the statute implicates the "void for vagueness" doctrine because the determination of an individual's "intent to damage such property" is left "to the unguided judgment of police authorities," asserting a due process void for vagueness argument. The Court will address each of defendants' arguments in turn.
As an initial matter, "legislative enactments carry a strong presumption of constitutionality" (People v Stuart, 100 NY2d 412, 422 [2003]). The First Amendment embodies the fundamental principle that governments have "no power to restrict expression because of its message, its ideas, its subject matter, or its content" (People v Marquan M., 24 NY3d 1, 8 [2014], quoting United States v Stevens, 559 US 460, 468 [2010]). However, this proscription is not an absolute one (People v Shack, 86 NY2d 529, 535 [1995]). The government may sometimes curtail speech when necessary to advance a significant and legitimate government interest (Clark v Community for Creative Non-Violence, 468 US 288, 293 [1984]).
Overly Board and Void for Vagueness
"A regulation of speech is overbroad if constitutionally-protected expression may be 'chilled' by the provision because it facially 'prohibits a real and substantial amount of' expression guarded by the First Amendment" (Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 127 [3d Dept 2022], quoting People v Marquan M., supra) This type of facial challenge requires a court to assess the wording of the statute—"without reference to the defendant's conduct" (People v Stuart, 100 NY2d at 42) —to decide whether "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" (United States v Stevens, 559 US at 473). "The test for determining overbreadth is whether the law on its face prohibits a real and substantial amount of constitutionally protected conduct. The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge" (People v Barton, 8 NY3d 70, 75-76 [2006] [quotation marks and citation omitted]). A law that is overbroad cannot be validly applied against any individual (see People v Stuart, 100 NY2d at 421).
In contrast, "the void-for-vagueness doctrine protects against the ills of a law that fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement" (Sullivan, 207 AD3d at 129). "[A]n as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case" (People v Stuart, 100 at 421). "[A] statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law" (id. at 419 [quotations and citation [*3]omitted]; accord People v Piznarksi, 113 AD3d 116, 174 [3d Dept 2013]). "A two-part test is used to determine whether a statute is unconstitutionally vague; first, 'the court must determine whether the statute in question is sufficiently definite to give a person of ordinary intelligence fair notice that his [or her] contemplated conduct is forbidden by the statute' and, '[s]econd, the court must determine whether the enactment provides officials with clear standards for enforcement'" (Piznarski, 113 AD3d at 174, quoting People v Stuart, 100 NY2d at 420).
A First Amendment analysis begins with an examination of the text of the challenged legislation since "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers" (United States v Williams, 553 US 285, 293 [2008], accord Bd. Of Trustees v Vil. Of Groton v Pirro, 152 AD3d 149, 157 [3d Dept 2017]).
Penal Law §145.60, "Making Graffiti," states:
1. For purposes of this section, the term "graffiti" shall mean the etching, painting, covering, drawing upon or otherwise placing of a mark upon public or private property with intent to damage such property.
2. No person shall make graffiti of any type on any building, public or private, or any other property real or personal owned by any person, firm or corporation or any public agency or instrumentality, without the express permission of the owner or operator of said property.
Here, the State of New York has a legitimate governmental interest is protecting the property of others from damage, preserving a community's aesthetic integrity and preventing urban blight (see e.g. Town of Islip v Caviglia, 73 NY3d 544, 553 [1989]). Defendants argue that the statute is overly broad because it prohibits all forms of expression and assumes a person acted with intent to damage property. Defendants further assert that "intent to damage such property" is vague. As discussed below, the statute is content neutral and prohibits an activity unrelated to the content of expression, the statute instead prohibits the destruction of personal and private property. Contrary to defendants' contentions, the statute does not presume intent, but instead defines the culpable mental state of the crime of "making graffiti." Whether an individual acted with the requisite intent is an issue of fact and credibility determination for the jury to resolve (see e.g. People v Danaher, 115 AD2d 905, 906 [3d Dept 1985]). Unlike the city ordinance discussed in Tuscan v City of Seattle, C23-17 MJP, 2024 WL 2133754 [(WD Wash May 10, 2024), relied upon by defendants, Penal Law §145.60 requires that an individual intend to damage the property upon which they have made the graffiti. In Tuscan, a person was guilty of property destruction under the city's ordinance if they intentionally wrote, painted or drew on any public or private building, structure, real or personal property, regardless of whether they intended to damage the property or not. Thus, under that ordinance, any act that was intentional, such as a child intentionally drawing a rainbow on the sidewalk with chalk without permission, could be determined to be property destruction. Under Penal Law §145.60, it is not the mere intentional act of placing graffiti onto another's property without permission that constitutes the crime, but the culpable mental state of intending to damage that property in the process. "Damage implies an injury or harm to property that lowers its value or involves loss of efficiency. Thus, an intent to damage may translate into an intent to injure or harm property by lowering its value or lessening its efficiency" (William C. Donnino, Practice Commentary, McKinney's Cons. Laws of NY, Book 39, Penal Law 145.60; see People v Collins, 288 Ad2d 756, 758 [3d Dept 2001] ["While no statutory definition of 'damages' is provided [under Penal [*4]Law §145.00, Criminal Mischief in the Fourth Degree], it is commonly recognized that the term contemplates 'injury or harm to property that lowers its value or involves loss of efficiency' and that only 'slight' damage must be proved"). The statute sufficiently outlines the conduct that it prohibits - marking another person's property without their permission, and "intent to damage" is understood to mean lowering the property's value or loss of its efficiency. Considering these elements together, defendants had adequate notice and law enforcement sufficient guidance as to what activity is prohibited (Piznarski, 113 AD3d at 174). The statute is neither overly board nor unconstitutionally vague.
Content Neutral
"A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech" (Ward v Rock Against Racism, 491 US 781, 791 [1989] [internal quotation marks and citations omitted][emphasis in original]). The appropriate standard by which to evaluate the constitutionality of a content-neutral regulation that imposes only an incidental burden on speech is the intermediate level of scrutiny (Town of Delaware v Leifer, 34 NY3 234, 244 [2019]). Under such scrutiny, "a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms ... if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest" (New York State Land Tit. Assn., Inc. v New York State Dept. of Fin. Services, 178 AD3d 611, 612 [1st Dept 2019], quoting United States v O'Brien, 391 US 367, 276 [1968]).
The "Making Graffiti" statute, enacted in 1992, emerged in response to the growing problem of graffiti in New York's urban centers, which was seen as a "physical blight upon the urban landscape" and a sign of "a deteriorating community" costing taxpayers millions in removal and repairs (L.1992, c. 458, §1, eff. Nov. 1, 1992). The law aimed to curb the proliferation of graffiti and its negative impact on urban centers (id.). The statute does not regulate the content of the graffiti, rather it seeks to advance the substantial government interest of protecting public and private property from damage; and is, therefore, content neutral (see People v Vinolas, 174 Misc 2d 740, 746 [Crim Ct 1997]). Courts have consistently found that the government has a legitimate and substantial interest in protecting a community's aesthetic and preventing urban blight (see Town of Delaware v Leifer, 34 NY3d 234, 244-245 [2019]; Town of Islip v Caviglia, 73 NY3d 544, 553 [1989]). The government's interest in preserving the quality of life in a community and preventing neighborhood deterioration is unrelated to the suppression or censorship of speech. The incidental restriction on free speech is no greater than is essential to further the government's interest in protecting public and private property from damage. Individuals are free to paint graffiti on their own property, or, with permission, on another's property, and may do so to express any particular point of view (see People v Vinolas, 174 Misc 2d at 746). Accordingly, the statute is not an unconstitutional infringement on the First Amendment.
As-Applied
Defendants next appear to argue that the statute is unconstitutional as applied to them because of the political messages that they wrote.
While defendants have a constitutional right to engage in political speech, that privilege [*5]does "not guarantee the right to communicate one's views at all times and places or in any manner that may be desired" (Heffron v International Socy. For Krishna Consciousness, Inc., 452 US 640, 647 [1981]). "Nothing in the Constitution commands that dissemination of all forms of speech at all times on all kinds of property are absolutely protected under the First Amendment, without regard for the nature of the activity, the property or the disruption that might be engendered by unregulated expressive activity in certain circumstances" (Matter of Rogers v New York City Tr. Auth., 89 NY2d 692, 698 [1997]). When reviewing the regulation of political speech in a public forum, the courts look to the language of the statute, and whether it prohibits expression because of the message or whether the statute is content neutral (see id.)
Assuming without deciding that that a SUNY campus is a traditional public forum, as discussed above, the "Making Graffiti" statute is content neutral and is narrowly tailored to serve a legitimate government purpose. Defendants have numerous other means to express their concerns that do not involve spray painting that message on campus property. Defendants have failed to demonstrate that the statute was discriminately applied to them based upon their viewpoint.
Duplicative Counts
Defendants next argue that the Criminal Mischief count should be dismissed because it is duplicative of the Making Graffiti count. The People contend that Making Graffiti is a lesser included offense, which is permissibly charged.
Defendants' reliance on People v Gomez, 204 AD3d 843 (2d Dept 2022) and Calceterra v Fisher, 73 AD3d 1370 (3d Dept 2010)[FN1]
, are misplaced. Gomez involved the dismissal of disciplinary charges in which the petitioner was charged for the same conduct in three separate disciplinary proceedings. The duplicative charges were dismissed. Calceterra involved two separate SORA proceedings involving separate risk assessment instruments, case summaries and different offenses, and therefore, were not considered duplicative.
Here, Making Graffiti is a lesser included offense of Criminal Mischief in the Second Degree. "A person is guilty of criminal mischief in the second degree when with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he has such right, he damages property of another person in an amount exceeding one thousand five hundred dollars" (Penal Law §145.10). A chief difference between "Criminal Mischief" and "Making Graffiti" is that "Making Graffiti" does not require proof of damage, only an intent to damage (see People v Vinolas, 174 Misc 2d 740, 745 [Crim Ct 1997] ["Whether [in a prosecution for 'making graffiti'] the defendant actually caused damage is irrelevant"]). The People appropriately charged the lesser included offense (see People v Dinant, 175 AD3d 1833, 1833-34 [4th Dept 2019]).
Necessity Defense
Defendants request for a justification defense of necessity is denied.
When, on consideration of the evidence most favorable to the defendant, a reasonable view of that evidence supports a finding of justification, the trial court should instruct the jury as to the defense and must do so when requested (see People v Watts, 57 NY2d 299, 301 [1982]). A justification defense applies "when conduct that would otherwise have been criminal 'is necessary as an emergency measure to avoid an imminent ... injury which is about to occur by [*6]reason of a situation occasioned or developed through no fault of the actor,' and the threatened injury is so grave as to outweigh the harm resulting from the actor's conduct" (People v Harden, 134 AD3d 1160, 1163 [3d Dept 2015], citing Penal Law §35.05[2]). Courts in New York have consistently denied application of the defense of justification by necessity in cases involving defendants who have engaged in civil disobedience (see People v Berlin, 70 Misc 3d 1 [App Term 2020]; People v Cromwell, 64 Misc 3d 53 [App Term 2019]). Defendants conduct, spray painting statements on campus property, with the intention of prompting the university to change its financial and/or investment policies as it may relate to the armed conflict in Gaza cannot be considered to have been reasonably calculated to prevent any harm to the people in Gaza suffering from the armed conflict. As such, defendants' act of civil disobedience was not "necessary as an emergency measure" to prevent harm to the people in Gaza (see People v Craig, 78 NY2d 616, 624-625 [1991]).
The Court has considered defendants' remaining arguments, and to the extent not specifically addressed, they are without merit.
Based upon the foregoing, it is hereby
ORDERED that defendants' motion is denied.
This shall constitute the decision and order of this Court.
Dated: August 8, 2025
Monticello, New York
ENTER:
HON. JAMES R. FARRELL
COUNTY COURT JUDGE
Papers Considered:
1. Notice of Motion, Attorney Affirmation in Support with Exhibits, Affidavits in Support from Sanin and Guillotin
2. Affirmation in Opposition with Exhibit

Footnotes

Footnote 1:Defendants mistakenly cited this case as 75 AD3d 1370.